UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NEW OLD MUSIC GROUP, INC.,

        Plaintiff,

     -v-

LUKASZ GOTTWALD, *et al.*,

        Defendants.

Civil Action No. 13 Civ. 9013 (RA)

# MEMORANDUM OF LAW IN SUPPORT OF
# DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

Page(s)

PRELIMINARY STATEMENT ................................................................................1

THE UNDISPUTED FACTS UNDERLYING THIS MOTION ................................3

I.     Background Facts Regarding "Zimba Ku" And "Price Tag" ...............................3

II.    Plaintiff's Claim Of Musical Similarities Between The Compositions At Issue................3

III.   The Rhythmic Similarities At Issue Are Common, Separately And In
       Combination ...............................................................................................5
       A.    The Rhythm Of Sixteen Continuous 16th Notes Is Common.................5
       B.    The Bass Drum Rhythm At Issue Is Common........................................6
       C.    The Snare Drum Rhythm At Issue Is Common ......................................6
       D.    "Buzzes" On The Snare Drum Are Common .........................................7
       E.    The Combination Of Rhythmic Elements Is Common ...........................7

IV.    There Are Substantial Rhythmic Differences Between "Zimba Ku" And
       "Price Tag" ...............................................................................................10

ARGUMENT .......................................................................................................11

I.     Summary Judgment Standard .......................................................................11

II.    Elements Of A Copyright Infringement Claim.................................................11

III.   Plaintiff Cannot Prove The Elements Of Copyright Infringement As A
       Matter Of Law ...........................................................................................14
       A.    The Commonplace Similarities At Issue Are Not Probative Of Copying
             And Insufficient To Support A Finding Of Substantial Similarity....................14
             1.    The Rhythm Of Sixteen Consecutive 16th Notes Is Common .................15
             2.    The Bass Drum Rhythm Is Common........................................16
             3.    The Snare Drum Rhythm At Issue Is Common .........................16
             4.    "Buzzes" On The Snare Drum Are Common ............................16
             5.    The Combination Of Rhythmic Elements Is Common............................17
             6.    Payne's Attempts To Distinguish Defendants' "Prior Art" Fail...............18
       B.    "Zimba Ku" And "Price Tag" Have Substantial Rhythmic Differences .............22
       C.    The "Total Concept And Feel" Of Each Song Is Completely Different...............23
       D.    Plaintiff's "Sampling" Argument Is An Irrelevant Diversionary Tactic .............24

CONCLUSION ...................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)................................................................................................11

*Arnstein v. Porter*,
154 F. 2d 464 (2d Cir. 1946)....................................................................................17

*Attia v. Society of the N.Y. Hosp.*,
201 F.3d 50 (2d Cir. 1999).......................................................................................22

*Batiste v. Najm*,
2014 U.S. Dist. LEXIS 86417 (E.D. La. June 25, 2014)..................................19, 21

*Boone v. Jackson*,
206 F. App'x 30 (2d Cir. 2006) ...........................................................................13, 14

*Bryant v. Maffucci*,
923 F.2d 979 (2d Cir. 1991).....................................................................................11

*Chafir v. Carey*,
2007 U.S. Dist. LEXIS 68397 (S.D.N.Y. Sept. 14, 2007)......................................18

*Crane v. Poetic Products Ltd.*,
593 F. Supp. 2d 585 (S.D.N.Y. 2009).....................................................................14

*Currin v. Arista Records, Inc.*,
724 F. Supp. 2d 286 (D. Conn. 2010)................................................................14, 15

*Dressler v. MV Sandpiper*,
331 F.2d 130 (2d Cir. 1964).....................................................................................11

*Durham Industries, Inc. v. Tomy Corp.*,
630 F.2d 905 (2d Cir. 1980).....................................................................................22

*Edwards v. Raymond*,
2014 U.S. Dist. LEXIS 71482 (S.D.N.Y. May 23, 2014)........................................23

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
499 U.S. 340 (1991).................................................................................................11

*Gottwald v. Jones*,
2011 U.S. Dist. LEXIS 103414 (S.D.N.Y. Sept. 12, 2011)................................13, 15

*Hoehling v. Universal City Studios, Inc.*,
    618 F.2d 972 (2d Cir. 1980)............................................................................14

*Intersong-USA v. CBS, Inc.*,
    757 F. Supp. 274 (S.D.N.Y. 1991) ...........................................................13, 17

*Jean v. Bug Music, Inc.*,
    2002 U.S. Dist. LEXIS 3176 (S.D.N.Y. Feb. 27, 2002)............................14, 18

*Johnson v. Gordon*,
    409 F.3d 12 (1st Cir. 2005)........................................................................14, 15

*Jorgensen v. Epic/Sony Records*,
    351 F.3d 46 (2d Cir. 2003)...............................................................................11

*Knitwaves, Inc. v. Lollytogs Ltd.*,
    71 F.3d 996 (2d Cir. 1995)...............................................................................13

*McDonald v. Multimedia Entm't, Inc.*,
    1991 U.S. Dist. LEXIS 10649 (S.D.N.Y. July 19, 1991) .................................12, 13

*Newton v. Diamond*,
    204 F. Supp. 2d 1244 (C.D. Cal. 2002) ...........................................................1, 24

*Porto v. Guirgis*,
    659 F. Supp. 2d 597 (S.D.N.Y. 2009).............................................................14

*Rogers v. Koons*,
    960 F.2d 301 (2d Cir. 1992).............................................................................13

*Siskind v. Newton-John*,
    1987 U.S. Dist. LEXIS 4084 (S.D.N.Y. May 22, 1987).................................14

*Smith v. Curb Records*,
    3 F. App'x 296 (6th Cir. 2001) .......................................................................14

*Tisi v. Patrick*,
    97 F. Supp. 2d 539 (S.D.N.Y. 2000)...............................................................14

*Toliver v. Sony Music Entm't, Inc.*,
    47 F. App'x 496 (9th Cir. 2002) .......................................................................14

*Vargas v. Transeau*,
    514 F. Supp. 2d 439 (S.D.N.Y. 2007)............................................................25

*Velez v. Sony Discos*,
    2007 U.S. Dist. LEXIS 5495 (S.D.N.Y. Jan. 16, 2007)..........................4, 5, 12, 15, 17, 23, 24

i

*Warner Bros., Inc. v. American Broad. Cos.*,
    654 F.2d 204 (2d Cir. 1981)......................................................................................................22

*Williams v. Crichton*,
    84 F.3d 581 (2d Cir. 1996)......................................................................................................14

6404989.15

Defendants Lukasz Gottwald, Prescription Songs LLC, Kasz Money, Inc., Kobalt Music

Publishing America Inc., Jessica Cornish, Sony/ATV Tunes LLC, Sony/ATV Music Publishing

(UK) Limited, UMG Recordings, Inc., Republic Records, a division of UMG Recordings, Inc.

(incorrectly sued as "Universal Republic Records") and Lava Music, LLC ("Defendants")

respectfully submit this memorandum of law in support of their motion, pursuant to Fed. R. Civ.

P. 56, for summary judgment in their favor on the single claim for copyright infringement

asserted against them by plaintiff New Old Music Group, Inc. ("Plaintiff").

## PRELIMINARY STATEMENT

This is an action for alleged copyright infringement. Plaintiff claims to own the

copyright in a musical composition called "Zimba Ku" written by an individual named Lenny

Goldsmith in 1975. A sound recording of this composition was recorded by the musical group

"Black Heat" thereafter. Plaintiff is **not** the copyright owner of that sound recording.[1]

Plaintiff alleges that its composition "Zimba Ku" was infringed by a musical composition

called "Price Tag". The Defendants are writers of "Price Tag," and corporate entities who are

alleged to have exploited "Price Tag".

There is almost nothing in common between the compositions at issue. Indeed,

Plaintiff's infringement claim is **solely** premised upon trite and unremarkable **rhythmic**

similarities between a repeating measure of the drum set part in "Zimba Ku" and a repeating

measure of the drum set part in "Price Tag".[2] It is undisputed that the works at issue have no

---

[1] "Sound recordings and their underlying musical compositions are separate works with their own distinct copyrights … A musical composition consists of rhythm, harmony, and melody", can be notated in sheet music, and can be performed by any musical performer with sufficient skill. *Newton v. Diamond*, 204 F. Supp. 2d 1244, 1248-1249 (C.D. Cal. 2002) (citations omitted), *aff'd* 349 F.3d 591 (9th Cir. 2003). A sound recording captures "the sound produced by … [a particular] performer's rendition of" a musical composition. *Id.*, at 1249-1250.

[2] Plaintiff refers to all measures of the "Zimba Ku" drum part collectively as the "drum composition" of "Zimba Ku". Plaintiff similarly refers to all measures of the "Price Tag" drum part collectively as the "drum composition"

other musical similarities of any significance, and that they have no lyrical similarities.

To establish copyright infringement, Plaintiff has the burden to prove: (1) it has a valid copyright in its work[3]; (2) that protectible elements of its work have been copied by the Defendants; and (3) that such copying amounts to unlawful appropriation. As a matter of law, Plaintiff cannot prove the second and third elements of this test because, as established by the admissions of the Plaintiff's own musical expert Jim Payne ("Payne"), and confirmed by the opinions of Defendants' own musical experts, the rhythmic similarities at issue are common, both alone and in combination, in extensive musical literature, all which predates "Price Tag" and most of which predates "Zimba Ku" (hereafter, "prior art"). Indeed, popular songs predating "Zimba Ku", including smash hit songs by the Jackson Five, contain the rhythmic elements at issue in combination. This rhythmic combination is also repeatedly set forth in a drum instruction book which was copyrighted fourteen years before the release of "Price Tag".

Summary judgment is warranted because Plaintiff cannot raise any genuine issue of material fact, given its admissions, to dispute that the only similarities at issue consist of commonplace rhythmic elements that were present (separately, and in combination) in prior art. Because they are admittedly commonplace, the rhythmic similarities at issue are not probative of copying; nor can they be characterized as substantial similarity between elements of protectible expression, as necessary for a finding of unlawful appropriation.

In opposing summary judgment, Plaintiff inevitably will raise multiple irrelevant matters. For example, Plaintiff likely will cite to purported distinctions between "Zimba Ku" and "Price Tag", on one hand, and the prior art cited by Defendants, on the other hand. However, as

---

of "Price Tag". As discussed below, numerous measures of the so-called "drum composition" of "Zimba Ku" contain rhythms which are not contained in the so-called "drum composition" of "Price Tag".

[3] For purposes of this Motion only, it is undisputed that Plaintiff has obtained a valid copyright registration in "Zimba Ku".

2

established by Payne's own admissions, all of these distinctions are either nonexistent, irrelevant or both. For example, Payne claimed in his reports that "Zimba Ku" and "Price Tag" do not contain any drum "fills", unlike numerous of the prior art songs cited by Defendants, which do contain drum "fills".[4] However, upon cross-examination at his deposition, Payne admitted that, in truth, many measures of "Zimba Ku" do contain drum "fills".[5]

Plaintiff's infringement claim should be dismissed as a matter of summary judgment.

## THE UNDISPUTED FACTS UNDERLYING THIS MOTION

### I. Background Facts Regarding "Zimba Ku" And "Price Tag"

Plaintiff is the copyright owner of a musical composition entitled "Zimba Ku" which was written in 1975 by an individual named Lenny Lee Goldsmith.[6] Statement of Undisputed Facts ("SUF"), ¶ 1. In 1975, the composition "Zimba Ku" was recorded by a musical group called "Black Heat". *Id.*, ¶ 2. Plaintiff does not own the copyright in the sound recording of "Zimba Ku" by Black Heat. *Id.*, ¶ 3.

Defendant Jessica Cornish p/k/a "Jessie J" is the featured vocal recording artist on the sound recording of a composition entitled "Price Tag". SUF, ¶ 4. The sound recording of "Price Tag" was released in 2011. *Id.*, ¶ 5. Each of the Defendants named in this action is a co-writer of, or otherwise exploited, "Price Tag". *Id.*, ¶ 6.

### II. Plaintiff's Claim Of Musical Similarities Between The Compositions At Issue

Plaintiff's claim of musical similarities between the composition "Zimba Ku" and the

---

[4] Payne defines a drum "fill" as a combination of notes on different parts of the drum set in a single beat.

[5] As a further diversion, Plaintiff also will likely cite to the opinion of a recording engineer named Peter Becker ("Becker") who speculatively claims that the recording of "Price Tag" purportedly contains a "sample" of the recording of "Zimba Ku". As explained in Argument Section III(D) below, Becker's opinions are contrary to Plaintiff's prior position that there is no "sample" at issue in this case (and indeed, no such "sample" exists). These opinions are also entirely irrelevant to this Motion given, *inter alia*, that Plaintiff does not own the recording of "Zimba Ku", and given Becker's admissions which establish that his opinions are speculative.

[6] The matters in this memorandum are undisputed by Defendants solely for purposes of this Motion.

composition "Price Tag" is premised upon the opinions of its expert witness Payne, a professional drummer. SUF, ¶¶ 7-8. Payne is not a musicologist, and, in fact, he has no undergraduate or graduate degree in music. *Id.*, ¶ 9.[7]

It is undisputed that there are no harmonic, melodic or lyrical similarities of any significance between "Zimba Ku" and "Price Tag". SUF, ¶ 11.[8] All of the similarities between the composition "Zimba Ku" and the composition "Price Tag" upon which Plaintiff's infringement claim is premised are contained in the drum parts of those compositions, and not in the parts played by any other instruments. *Id.*, ¶ 12. All of the similarities are rhythmic similarities, and are contained in a single measure of "Zimba Ku" and a single measure of "Price Tag." *Id.*, ¶¶ 13-14. These rhythms in the respective measures at issue are repeated in numerous other measures of the respective songs. *Id.*, ¶ 14.

The only rhythmic similarities cited by Payne between the repeating measure at issue in "Zimba Ku" and the repeating measure at issue in "Price Tag" are the following: (i) sixteen consecutive 16th notes on the hi-hat cymbal; (ii) a bass drum[9] pattern consisting of two 8th notes on the first beat of the measure, followed by three syncopated notes on beats 2 and 3; (iii) snare drum attacks on beats 2 and 4; and (iv) a "buzz" on the snare drum at the end of the measure.[10] SUF, ¶ 15. Payne's transcription of the rhythmic similarities at issue is set forth below:

---

[7] Payne testified that he did not know what the term "musicology" meant, though he later tried to provide a definition for that term in the "errata sheet" for his deposition transcript. SUF, ¶ 10.

[8] Five elements of musical compositions may be pertinent in determining similarity: (1) structure; (2) harmony; (3) rhythm; (4) melody; and (5) lyrics (when present). *Velez v. Sony Discos*, 2007 U.S. Dist. LEXIS 5495, at *15-16 (S.D.N.Y. Jan. 16, 2007), *reconsideration denied* 2007 U.S. Dist. LEXIS 27343 (S.D.N.Y. Apr. 5, 2007); Report of Lawrence Ferrara, Ph.D. ("Ferrara Report") at ¶ 12, attached as Exhibit 5 to the Declaration of Jeffrey M. Movit dated October 6, 2014 ("Movit Decl.").

[9] A bass drum is also known as a "kick drum".

[10] As explained in Defendants' expert reports, there is, in truth, no such "buzz" in "Price Tag". However, for purpose of this Motion only, Defendants will assume that such a "buzz" exists in both works at issue.



## III. The Rhythmic Similarities At Issue Are Common, Separately And In Combination

### A. The Rhythm Of Sixteen Continuous 16th Notes Is Common

The first rhythmic similarity between "Zimba Ku" and "Price Tag" – sixteen continuous 16th notes played on the hi-hat cymbal – is very common. Defendants' experts Dr. Lawrence Ferrara[11] and Steven Wolf[12] located, in a non-exhaustive search, many examples of popular songs predating "Zimba Ku" which contain that rhythm. Plaintiffs' expert Payne has conceded that numerous of these songs indeed contain this rhythm.

Examples of songs which, by Payne's admission, contain the rhythm of sixteen consecutive 16th notes performed on the hi-hat and/or the tambourine, and which pre-date "Zimba Ku", include: (i) the 1972 song "Me and Bobby McGee" by Thelma Houston and

---

[11] Dr. Ferrara is the Professor of Music and Director Emeritus of all studies (B.M. through Ph.D.) in Music and the Performing Arts at the Steinhardt School at New York University. It has been held that "Dr. Ferrara is eminently qualified by his knowledge, skill, experience, training, and education to render expert opinions on the musicological similarities and differences ….", and noted that Ferrara "has been credited and relied upon as an expert on several occasions in this Circuit and others." *Velez*, 2007 U.S. Dist. LEXIS 5495, at *13-14 (collecting authority).

[12] Mr. Wolf is a drummer, drum programmer, music producer, writer and music historian. He has been working with major-label recording artists for over 25 years, has performed on numerous gold, platinum and Grammy-winning albums, and has had his own instructional column in DrumHead Magazine.

6404989.15

George Benson (SUF, ¶¶ 16-17); (ii) the 1974 song "Breakthrough" by Isaac Hayes (*Id.*, ¶ 20); (iii) the 1970 song "ABC" by the Jackson Five (*Id.*, ¶ 18); (iv) the 1971 song "I Will Find a Way" by the Jackson Five (*Id.*, ¶ 19); and (v) the 1973 song "I'm Gonna Love You Just a Little Bit More Baby" by Barry White (*Id.*, ¶ 21).

Payne also admits this rhythm was featured in an instruction book entitled *The Drumset Musician* (copyrighted in 1997), which includes an exercise entitled "Funk Blues" that has numerous measures which contain sixteen consecutive 16th notes on the hi-hat. (*Id.*, ¶ 22)

### B.     The Bass Drum Rhythm At Issue Is Common

The second rhythmic similarity between "Zimba Ku" and "Price Tag" – a bass drum pattern consisting of two eighth notes on the first beat of the measure, followed by three syncopated notes on beats 2 and 3 – is also very common.

Dr. Ferrara and Mr. Wolf also located many popular songs pre-dating "Zimba Ku" which contain this bass drum rhythm. Again, Payne concedes that many of these songs indeed contain the rhythm at issue, including: (i) "Me and Bobby McGee" (SUF, ¶ 23); (ii) "ABC" (*Id.*, ¶ 24); (iii) "I Will Find a Way" (*Id.*, ¶ 25); (iv) "Breakthrough" (*Id.*, ¶ 28); (v) the 1971 song "It's Great to Be Here" by the Jackson Five (*Id.*, ¶ 26); (vi) the 1971 song "Never Can Say Goodbye" by the Jackson Five (*Id.*, ¶ 27); (vii) the 1974 song "Nautilus" by Bob James (*Id.*, ¶ 29); (viii) the 1971 song "Do the Funky Penguin, Pt. 1" by Rufus Thomas (*Id.*, ¶ 30); and (ix) the 1974 song "Funky President (People It's Bad)" by James Brown (*Id.*, ¶ 31).

Payne also admitted that the exercise entitled "Funk Blues" in the instruction book entitled *The Drumset Musician* has measures which contain the same bass drum pattern as the measure at issue in "Zimba Ku" and the measure at issue in "Price Tag". SUF, ¶ 32.

### C.     The Snare Drum Rhythm At Issue Is Common

The third rhythmic similarity – snare drum attacks on beats 2 and 4 – is, by Payne's own

admission, very common.  SUF, ¶¶ 33-34.  (Beats 2 and 4 are commonly known as the "backbeat".)  Examples of songs located by Dr. Ferrara and Mr. Wolf which pre-date "Zimba Ku" and which Payne has admitted contain snare drum attacks on beats 2 and 4 are: (i) "Me and Bobby McGee" (SUF, ¶ 35); (ii) "ABC" (*Id.*, ¶ 36); (iii) "I Will Find a Way" (*Id.*, ¶ 37); (iv) "It's Great to Be Here" (*Id.*, ¶ 38); (v) "Never Can Say Goodbye" (*Id.*, ¶ 39); (vi) "Breakthrough" (*Id.*, ¶ 41); (vi) the 1972 song "Long Red (Live)" by Mountain (*Id.*, ¶ 40); and (vii) the 1970 song "Good Old Music" by Funkadelic (*Id.*, ¶ 42).

Payne also admitted that the exercise entitled "Funk Blues" in the instruction book entitled *The Drumset Musican* also has measures which contain the same snare drum attack on beats 2 and 4 as the measures at issue in "Zimba Ku" and "Price Tag".  SUF, ¶ 43.

### D.      "Buzzes" On The Snare Drum Are Common

According to Payne, "Zimba Ku" and "Price Tag" each contain a "buzz" at the end of their respective measures at issue.  (Payne alternately refers to these "buzzes" as a "ghost notes" or "drags".  SUF, ¶¶ 44-45.)  By Payne's own admission, the "buzzes" in "Zimba Ku" and "Price Tag" are "very hard to hear"; because they are so hard to hear, each "buzz" comprises an "indeterminate" number of notes.  *Id.*, ¶¶ 46-47.

Payne admits it is common for drummers to use a "buzz", "ghost note" or "drag."  *Id.*, ¶¶ 48-51.  Examples of popular songs that predate "Zimba Ku" and which contain "buzzes", "drags" or "ghost notes" at the end of a measure include "Rock Steady" by Aretha Franklin (1972); "Can't You Hear Me Knocking" by The Rolling Stones (1971); "Talking' Loud And Sayin' Nothing" by James Brown (1972); "Funky Drummer" by James Brown (1970); and "Nautilus" by Bob James (1974).  *Id.*, ¶ 52.

### E.      The Combination Of Rhythmic Elements Is Common

The **combination** of rhythmic similarities in "Zimba Ku" and "Price Tag" is also

common. Songs which predate "Zimba Ku" and combine the rhythmic elements at issue

include: (i) "Me and Bobby McGee", which Payne admits contains the combination of sixteen

consecutive 16th notes on the hi-hat, the identical bass drum pattern as "Zimba Ku" and "Price

Tag", and snare drum attacks on beats 2 and 4 (SUF, ¶ 53); (ii) "ABC", which Payne admits

contains the combination of sixteen consecutive 16th notes on the tambourine, the identical bass

drum pattern as "Zimba Ku" and "Price Tag", and snare drum attacks on beats 2 and 4 (*Id.*, ¶

54); and (iii) "I Will Find a Way", which Payne admits contains the combination of sixteen

consecutive 16th notes on the tambourine, the identical bass drum pattern as "Zimba Ku" and

"Price Tag", and snare drum attacks on beats 2 and 4 (*Id.*, ¶ 55).[13] Dr. Ferrara's transcription

below (also set forth on page 21 of his Initial Report) demonstrates the shared rhythmic elements

(which are highlighted in yellow) between this prior art, "Zimba Ku" and "Price Tag"[14]:

---

[13] Also, "It's Great to Be Here" contains the combination of fourteen consecutive 16th notes on the hi-hat, the identical bass drum pattern as "Zimba Ku" and "Price Tag", and snare drum attacks on beats 2 and 4. SUF, ¶ 57. Further, "Never Can Say Goodbye" contains the combination of the identical bass drum pattern as "Zimba Ku" and "Price Tag", and snare drum attacks on beats 2 and 4. *Id.*, ¶ 58.

[14] As discussed above, all of the highlighted rhythmic elements in Dr. Ferrara's transcription below have been conceded by Payne, with the sole exception of the issue of whether a "buzz" exists at the end of the measure in "Price Tag." Although not set forth on Dr. Ferrara's transcription, for purposes of this Motion, Defendants will assume that a "buzz" exits at the end of the measure in "Price Tag".



9

Payne also admits that there are eight measures of the exercise entitled "Funk Blues" from the instruction book *The Drumset Musician* (which is marketed as a "beginning- to intermediate-level book") that contain the combination of sixteen consecutive 16th notes on the hi-hat, the identical bass drum pattern as "Zimba Ku" and "Price Tag", and snare drum attacks on beats 2 and 4, as follows:



SUF, ¶ 56; *Compare with* Payne transcription of "Zimba Ku" and "Price Tag", p. 5, *supra*.

## IV.  There Are Substantial Rhythmic Differences Between "Zimba Ku" And "Price Tag"

Notwithstanding the similarities discussed above, there are substantial – and undisputed – differences between the drum rhythms in "Zimba Ku" and the drum rhythms in "Price Tag." While the drum rhythms do not change in "Price Tag", that is not the case in "Zimba Ku".  By Payne's own admission, fourteen measures of "Zimba Ku" contain drum rhythms which are not at issue, not contained in "Price Tag", and which are different from the drum rhythms at issue in the repeating measure of "Zimba Ku".  SUF, ¶ 87.

There are also substantial rhythmic differences between the overall percussion rhythms in "Zimba Ku" and the percussion rhythms in "Price Tag".  Specifically, in addition to the snare, bass drum and hi-hat parts, "Zimba Ku" also contains the following percussion elements: shaker, tambourine, conga drums, cowbell and handclaps.  *Id.*, ¶ 59.  These percussion elements are performed throughout "Zimba Ku" simultaneously with the drum rhythms at issue.  Accordingly, the listener of "Zimba Ku" never **hears** the drum rhythms at issue in isolation.  Rather, the rhythm that the listener of "Zimba Ku" hears is the **combination** of the drum rhythm at issue

10

with other percussion elements. Payne admits that the rhythms in "Zimba Ku" that are played by these other elements – shaker, tambourine, conga drums, cowbell and handclaps – are not in "Price Tag". *Id.*, ¶¶ 64-68.

## ARGUMENT

### I. Summary Judgment Standard

Summary judgment is appropriate where, drawing all reasonable inferences in favor of the nonmoving party, the evidence demonstrates that "there is no genuine issue as to any material fact and [that] the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "Once the movant has established a *prima facie* case demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with enough evidence to support a jury verdict in its favor." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991). The nonmovant cannot defeat the motion simply by presenting a "metaphysical doubt" regarding the facts or "conjecture or surmise," *id.*, or "conclusory allegations." *Dressler v. MV Sandpiper*, 331 F.2d 130, 133 (2d Cir. 1964).

### II. Elements Of A Copyright Infringement Claim

To prevail on its copyright infringement claim, Plaintiff must establish (i) ownership of a valid copyright; and (ii) unauthorized copying of a copyrighted work. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). "'Infringement by unauthorized copying' requires proof of two elements: (1) that defendant actually copied the work—which may be proven by direct evidence or by indirect evidence, of access plus 'probative' similarities, and (2) that the copying was an 'improper appropriation,' meaning that 'substantial similarity to protected material exists between the two works.'" Order (Dkt. No. 35) (quoting *Laureyssens v. Idea Grp., Inc.*, 964 F.2d 131, 139 (2d Cir. 1992)); *see also Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 51 (2d Cir. 2003).

The first inquiry – whether Defendants "actually copied" Plaintiff's work – can be proven by either direct or indirect evidence.[15]  Indirect evidence will only suffice, however, if the "'person who composed defendant's work had access to the copyrighted material, and … there are similarities between the two works that are probative of copying.'"  *Velez*, 2007 U.S. Dist. LEXIS 5495, at *20.  Similarities between works are "probative of copying" only if the "similarities … would not be expected to arise if the works had been created independently."  *Id.*, at *20-*21 (citations omitted).  Stated differently, "not all similarities are 'probative similarities'; the similarities must be of such a nature that they would be unlikely to arise in works of independent creation."  *Id.*, at *30-*31.

Expert testimony is appropriately considered in determining whether a particular musical element is or is not a probative similarity, because, for example, "it is so commonplace that it is not unlikely to arise [in] independently created works."  Order (Dkt. No. 35); *see also Velez*, 2007 U.S. Dist. LEXIS 5495, at *31 (expert report demonstrated that use of consecutive eight-measure phrases in the structure of a composition was commonplace by listing other popular songs that made use of the same structural device); *McDonald v. Multimedia Entm't, Inc.*, 1991 U.S. Dist. LEXIS 10649, at *5 (S.D.N.Y. July 19, 1991) ("Evidence admissible on the issue of 'probative similarity' includes expert testimony 'dissecting' the two works and discussing the works' relationships to other earlier works, for the purpose of illuminating whether similarities between the two works are more likely due to copying or independent creation.").

The second query – the "improper appropriation" analysis – considers whether the works at issue are "substantially similar."  "In most cases, the test for 'substantial similarity' is the so-

---

[15] In this type of copyright infringement action, actual copying is almost invariably established (if at all) through indirect, as opposed to direct, evidence.  Even "smoking gun" evidence such as a videotape of the defendant listening to the plaintiff's song merely constitutes proof of access, but not evidence of direct copying.  *Velez,* 2007 U.S. Dist. LEXIS 5495, at *26-27.

12

called 'ordinary observer test'", *i.e.*, "whether 'an average lay observer would [] recognize the alleged copy as having been appropriated from the copyrighted work'". *Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1002 (2d Cir. 1995) (citation omitted). In applying the *Knitwaves* standard, a "'court … must analyze the two works closely to figure out in what respects, if any, they are similar, and then determine whether these similarities are due to protected aesthetic expressions original to the allegedly infringed work, or whether the similarity is due to something in the original that is free for the taking.'" *Boone v. Jackson*, 206 F. App'x 30, 33 (2d Cir. 2006) (citation omitted). However, when comparing works "that contain both protectible and unprotectible elements … the [Court's] inspection must be 'more discerning'; [the Court] must attempt to extract the unprotectible elements from … consideration and ask whether the *protectible elements, standing alone*, are substantially similar." *Knitwaves*, 71 F.3d at 1003 (citation omitted) (emphasis in original). This is because the fact "that a whole work is copyrighted does not mean that every element of it is copyrighted …." *Rogers v. Koons*, 960 F.2d 301, 307 (2d Cir. 1992). Because the test for "improper or unlawful appropriation" is the response of the ordinary observer, expert testimony is not considered in evaluating substantial similarity. *Gottwald v. Jones*, 2011 U.S. Dist. LEXIS 103414, at *9 (S.D.N.Y. Sept. 12, 2011).

In conducting the probative and substantial similarity analyses, it is important to recognize that "a defendant is not liable for infringement even if he copies, if the copied material is not protectable." *McDonald*, 1991 U.S. Dist. LEXIS 10649, at *6.[16] In the context of music, it long has been held that certain compositional elements common to many songs "are unoriginal and constitute 'scenes a faire,' or ordinary, unprotectible expression" that no composer is entitled to monopolize. *Intersong-USA v. CBS, Inc.*, 757 F. Supp. 274, 282 (S.D.N.Y. 1991) (citation

---

[16] For the avoidance of doubt, Defendants emphatically deny any copying.

omitted). *Accord, Boone*, 206 F. App'x at 33 ("it is well-established that common phrases are not protectable under copyright ….") (citing *Acuff-Rose Music, Inc. v. Jostens, Inc.*, 155 F.3d 140, 144 (2d Cir. 1998)); *Currin v. Arista Records, Inc.*, 724 F. Supp. 2d 286, 291 (D. Conn. 2010).

## III.     Plaintiff Cannot Prove the Elements of Copyright Infringement as a Matter of Law

"Courts have regularly granted summary judgment in copyright cases where it is clear that the plaintiff cannot make out the elements of the claim." *Siskind v. Newton-John*, 1987 U.S. Dist. LEXIS 4084, at *11 (S.D.N.Y. May 22, 1987); *see also Hoehling v. Universal City Studios, Inc.*, 618 F.2d 972, 977 (2d Cir. 1980) (summary judgment is appropriate in copyright infringement cases "to put 'a swift end to meritless litigation' and to avoid lengthy and costly trials." (citation omitted)). Further, "summary judgment may be granted when any similarities between the works relate only to non-copyrightable elements or when no reasonable jury could find the two works substantially similar." *Jean v. Bug Music, Inc.,* 2002 U.S. Dist. LEXIS 3176, at *15 (S.D.N.Y. Feb. 27, 2002); *see also Currin*, 724 F. Supp. 2d at 291. Indeed, courts routinely grant summary judgment in copyright infringement cases when, as here, the plaintiff has failed to adduce any similarities between the works that are probative of copying and/or when no reasonable fact finder could find the works to be substantially similar.[17]

### A.      The Commonplace Similarities At Issue Are Not Probative Of Copying And Insufficient To Support A Finding Of Substantial Similarity

Payne identified the only rhythmic similarities at issue as: (1) sixteen consecutive 16th notes on the hi-hat cymbal; (2) a bass drum pattern consisting of two 8th notes on the first beat of

---

[17] *E.g., Johnson v. Gordon*, 409 F.3d 12, 25 (1st Cir. 2005); *Toliver v. Sony Music Entm't, Inc.*, 47 F. App'x 496, 497 (9th Cir. 2002); *Smith v. Curb Records,* 3 F. App'x 296, 298 (6th Cir. 2001); *Williams v. Crichton,* 84 F.3d 581, 588-89 (2d Cir. 1996); *Porto v. Guirgis*, 659 F. Supp. 2d 597, 616 (S.D.N.Y. 2009); *Crane v. Poetic Products Ltd.*, 593 F. Supp. 2d 585, 597 (S.D.N.Y. 2009); *Jean v. Bug Music, Inc.*, 2002 U.S. Dist. LEXIS 3176, at *15; *Siskind v. Newton-John*, 1987 U.S. Dist. LEXIS 4084, at *12.

14

the measure, followed by three syncopated notes on beats 2 and 3; (3) snare drum attacks on beats 2 and 4; and (4) a "buzz" on the snare drum at the end of the measure. SUF, ¶ 15.

As discussed below, Payne concedes that these elements exist, separately and in combination, in substantial prior art. Thus, Plaintiff cannot raise a material issue of fact to establish that "Zimba Ku" and "Price Tag" have similarities probative of copying, or that they are substantially similar. *Johnson*, 409 F.3d at 23 ("harmonic progression, which is a stereotypical building block of musical composition, lacks originality" and "[a]ccordingly, it is unprotect[i]ble."); *Currin*, 724 F. Supp. 2d at 291 ("commonly-used elements such as a descending scale step motive, the use of the eight-measure phrase, or the use of 4/4 rhythm are not, in themselves, protectible."); *Velez*, 2007 U.S. Dist. LEXIS 5495, at *38-39 (use of common "structural element is not protectible, and cannot form the only basis for establishing substantial similarity in the pieces of music."); *Tisi v. Patrick*, 97 F. Supp. 2d 539, 548-549 (S.D.N.Y. 2000) (holding that elements such as "a chord structure/harmonic progression common to much rock music" and a "guitar rhythm … are not copyrightable as a matter of law"); *Gottwald*, 2011 U.S. Dist. LEXIS 103414, at *18 ("The two songs share the same rhythmic pulse, but this is not copyrightable.").

### 1. The Rhythm Of Sixteen Consecutive 16th Notes Is Common

The first rhythmic similarity between "Zimba Ku" and "Price Tag" – sixteen continuous 16th notes played on the hi-hat cymbal – is very common. It is undisputed that songs which contain this rhythm performed on the hi-hat and/or the tambourine, and which pre-date "Zimba Ku", include: (i) "Me and Bobby McGee" (SUF, ¶¶16-17); (ii) "Breakthrough" (*Id.*, ¶ 20); (iii) "ABC" (*Id.*, ¶ 18); (iv) "I Will Find a Way" (*Id.*, ¶ 19); and (v) "I'm Gonna Love You Just a

15

Little Bit More Baby" (*Id.*, ¶ 21).[18]  This rhythm was also featured in the instruction book entitled *The Drumset Musician* in the exercise entitled "Funk Blues".  *Id.*, ¶ 22.

<strong>2.        The Bass Drum Rhythm Is Common</strong>

The second rhythmic similarity between "Zimba Ku" and "Price Tag" – a bass drum pattern consisting of two 8th notes on the first beat of the measure, followed by three syncopated notes on beats 2 and 3 – is also very common.  It is undisputed that this rhythm is contained in songs including: (i) "Me and Bobby McGee" (SUF, ¶ 23); (ii) "ABC" (*Id.*, ¶ 24); (iii) "I Will Find a Way" (*Id.*, ¶ 25); (iv) "Breakthrough" (*Id.*, ¶ 28); (v) "It's Great to Be Here" (*Id.*, ¶ 26); (vi) "Never Can Say Goodbye" (*Id.*, ¶ 27); (vii) "Nautilus" (*Id.*, ¶ 29); (viii) "Do the Funky Penguin, Pt. 1" (*Id.*, ¶ 30); and (ix) "Funky President (People It's Bad)" (*Id.*, ¶ 31).  This rhythm was also featured in the "Funk Blues" exercise in the *The Drumset Musician* book.  *Id.*, ¶ 32.

<strong>3.        The Snare Drum Rhythm At Issue Is Common</strong>

The third rhythmic similarity – snare drum attacks on the "backbeat" of beats 2 and 4 – is, by Payne's own express admission, very common.  SUF, ¶¶ 33-34.  Examples of songs containing this snare drum rhythm on beats 2 and 4 are: (i) "Me and Bobby McGee" (SUF, ¶ 35); (ii) "ABC" (*Id.*, ¶ 36); (iii) "I Will Find a Way" (*Id.*, ¶ 37); (iv) "It's Great to Be Here" (*Id.*, ¶ 38); (v) "Never Can Say Goodbye" (*Id.*, ¶ 39); (vi) "Breakthrough" (*Id.*, ¶ 41); (vi) "Long Red (Live)" (*Id.*, ¶ 40); and (vii) "Good Old Music" (*Id.*, ¶ 42).  Once again, this rhythm was also featured in the "Funk Blues" exercise in *The Drumset Musician.* instruction book.  *Id.*, ¶ 43.

<strong>4.        "Buzzes" On The Snare Drum Are Common</strong>

The final similarity – a "buzz" (alternately called a "ghost note" or a "drag") on the snare

---

[18] To establish the common nature of this rhythm, Defendants are relying upon the examples of this rhythm in prior art which were admitted by Payne.  Although it is not necessary for determination of this Motion in Defendants' favor, the Court may note that many more examples of this rhythm in prior art are cited on page 4 of Steven Wolf's initial expert report.  *See* Movit Decl., Ex. 8.

drum at the end of the measure – is by Payne's own admission common. SUF, ¶¶ 44-51.

Examples of popular songs predating "Zimba Ku" which undisputedly contain "buzzes", "drags" or "ghost notes" at the end of a measure include "Rock Steady"; "Can't You Hear Me Knocking"; "Talking' Loud And Sayin' Nothing"; "Funky Drummer"; and "Nautilus". *Id.*, ¶ 52.

Importantly, Payne admits the "buzzes" in "Zimba Ku" and "Price Tag" are "very hard to hear" by an ordinary listener. SUF, ¶ 45. This entirely undermines any argument by Plaintiff that the "buzzes" support a finding of substantial similarity. *Velez*, 2007 U.S. Dist. LEXIS 5495, at *38 (in a substantial similarity analysis, "[t]he similarities must be 'more than de minimis.'" (quoting *Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc.*, 338 F.3d 127, 131 (2d Cir. 2003))); *Arnstein v. Porter*, 154 F. 2d 464, 473 (2d Cir. 1946) ("The impression made on the refined ears of musical experts … [is] utterly immaterial on the issue of misappropriation ….").

### 5. The Combination Of Rhythmic Elements Is Common

As set forth above, the claimed rhythmic similarities between "Zimba Ku" and "Price Tag" are found in unassailable prior art and therefore common. As such, those similarities are not probative of copying. *E.g.*, *Velez v*, 2007 U.S. Dist. LEXIS 5495, at *31-32 ("use of consecutive eight-measure phrases in the structure of a composition" was common and could not be probative of copying). Further, such common musical elements are unprotectible, and thus cannot provide a basis for a finding of substantial similarity. *E.g.*, *Intersong-USA*, 757 F. Supp. at 282 (songs' "structure patterns, their use of a certain harmonic progression and a recurring eighth note rhythm" were "common elements are found in many other well-known songs" and thus were "unoriginal and constitute 'scenes a faire,' or ordinary, unprotectible expression").

The **combination** of rhythmic similarities between "Zimba Ku" and "Price Tag" is also common. Prior art songs which Payne admits include the combination of rhythmic elements as those shared by "Zimba Ku" and "Price Tag" (other than the practically inaudible and

17

commonplace "buzz") are: (i) "Me and Bobby McGee", which includes measures containing the combination of sixteen consecutive 16th notes on the hi-hat, the identical bass drum pattern as "Zimba Ku" and "Price Tag", and snare drum attacks on beats 2 and 4 (SUF, ¶ 53); (ii) "ABC", which includes measures containing the combination of sixteen consecutive 16th notes on the tambourine, the identical bass drum pattern as "Zimba Ku" and "Price Tag", and snare drum attacks on beats 2 and 4 (*Id.*, ¶ 54); and (iii) "I Will Find a Way", in which twenty-three measures contain the combination of sixteen consecutive 16th notes on the tambourine, the identical bass drum pattern as "Zimba Ku" and "Price Tag", and snare drum attacks on beats 2 and 4 (*Id.*, ¶ 55). Payne also admits, as he must, that there are eight measures of the exercise entitled "Funk Blues" from the instruction book *The Drumset Musician* which contain the combination of sixteen consecutive 16th notes on the hi-hat, the identical bass drum pattern as "Zimba Ku" and "Price Tag", and snare drum attacks on beats 2 and 4. SUF, ¶ 56.

Because the combination of the rhythmic similarities between "Zimba Ku" and "Price Tag" – which individually are commonplace and unprotectible – is also common, that combination cannot support a finding of substantial similarity. *See Jean*, 2002 U.S. Dist. LEXIS 3176, at *19 ("the lyrical phrase and the three notes are so common and unoriginal that even when they are combined they are not protectable"); *Chafir v. Carey*, 2007 U.S. Dist. LEXIS 68397, at *17-18 n.9 (S.D.N.Y. Sept. 14, 2007) (emphasis addded) (where combination of unprotectible "musical elements ha[d] been used before in at least **three other popular music compositions**," such combination was insufficient to raise a genuine issue of fact as to striking similarity).

### 6. Payne's Attempts To Distinguish Defendants' "Prior Art" Fail

In an attempt to obscure Defendants' clear entitlement to summary judgment, Payne's reports asserted numerous purported differences between the drum set parts of "Zimba Ku" and

"Price Tag", on one hand, and the prior art cited by Defendants' experts, on the other hand. However, as explained below, the admissions Payne made in his deposition testimony establish that all of these purported distinctions are nonexistent and/or irrelevant.

*First*, Payne tried to distinguish some of the songs which were cited as prior art by Defendants from "Zimba Ku" and "Price Tag" by claiming that some of those prior art songs had different tempos than "Zimba Ku" and "Price Tag". (Tempo is the speed at which a musical composition is performed. SUF, ¶¶ 69-70.) As a threshold matter, this purported distinction is irrelevant because "Zimba Ku" and "Price Tag" do not have the same tempo throughout. The tempo of "Zimba Ku" begins at about 87.5 beats per minute but accelerates to a tempo of about 93.5 beats per minute by the end of the song. SUF, ¶ 73. In contrast, "Price Tag" maintains a consistent tempo throughout the song. *Id.*, ¶ 74.

In any event, any purported differences in tempo between the songs at issue is irrelevant. Courts have recognized that tempo is unprotectible. *Batiste v. Najm*, 2014 U.S. Dist. LEXIS 86417 , at *54 (E.D. La. June 25, 2014) ("As with chord progressions, there are only a limited number of tempos, and 'these appear to have been long since exhausted.'") (citation omitted)). A composition does not change depending upon the tempo at which it is performed; for example, "Mary Had a Little Lamb" is the same composition when performed at 80 beats per minute and when performed at 95 beats per minute. SUF, ¶ 72. As Payne admitted at his deposition, all of the notes in a composition retain their relationship to each other in terms of rhythm and pitch, irrespective of the tempo at which the composition is performed. *Id.*, ¶ 71.

*Second*, Payne attempted to distinguish some of Defendants' prior art by claiming that some measures in those prior art songs (which measures did not contain the rhythmic similarities at issue) were in time signatures other than 4/4 time. (The entirety of "Zimba Ku" and the

entirety of "Price Tag" are in 4/4 time.)  However, this is another entirely irrelevant distinction because all of the measures of the songs cited by Defendants as prior art which contain the rhythmic similarities at issue are in 4/4 time.  SUF, ¶¶ 75-76.

*Third*, Payne attempted to distinguish some of the prior art songs by contending that: (a) the drum parts are "isolated" during the introduction sections of "Zimba Ku" and "Price Tag"; and (b) in some of the prior art songs, there is no introduction section featuring an "isolated" drum part.  Payne's contention that the drum parts in "Zimba Ku" and "Price Tag" are "isolated" is simply wrong.  In addition to the drum set part, the introduction section of "Zimba Ku" also contains cowbell, shaker, tambourine, conga drums, handclaps, vocals and bass guitar.  SUF, ¶¶ 77-78.  In addition to the drum set part, there is electric guitar, bass guitar, voice and organ in the introduction to "Price Tag".  *Id.*, ¶ 79.

At any rate, introductions with isolated drums are common.  The songs "Breakthrough" by Isaac Hayes (from 1974), "Good Old Music" by Funkadelic (from 1970), "Synthetic Substitution" by Melvin Bliss (from 1973), "I'm Going to Love You Just a Little More, Baby" by Barry White (from 1973), "Long Red (Live)" by Mountain (from 1972), "Funky President (People It's Bad)" by James Brown (from 1974), "Impeach the President" by the Honeydrippers (from 1973), "Kissing My Love" by Bill Withers (from 1972), "Palm Grease" by Herbie Hancock (from 1974), "When the Levee Breaks" by Led Zeppelin (from 1971), "Sing, Sing, Sing" by Gene Krupa (from 1937), "Rock and Roll" by Led Zeppelin (from 1971), and "Keep a Knockin" by Little Richard (from 1957) all have introductions featuring drums.  SUF, ¶ 80.[19]

*Fourth*, Payne attempted to distinguish some of the prior art songs from "Zimba Ku" and

---

[19] Payne testified at his deposition that 1 out of every 15 pop songs has an introduction featuring isolated drums; he later attempted to withdraw that testimony in his "errata sheet" and claim that 1 of every 100 or 150 pop music songs has an introduction featuring isolated drums – which, even if credited, is a meaningless distinction.  *Id.*, ¶ 81.

"Price Tag" by claiming that in some of those prior art songs, the drum part does not contain a one-measure rhythmic phrase which is then repeated in subsequent measures, as occurs in "Zimba Ku" and "Price Tag".  As admitted by Payne, however, it is a common practice in popular music to "loop" (*i.e.*, repeat) a one-bar or two-bar rhythmic phrase.  SUF, ¶¶ 82-83.

*Fifth*, Payne attempted to distinguish some of the prior songs from "Zimba Ku" and "Price Tag" by claiming that: (a) the drum parts in "Zimba Ku" and "Price Tag" do not contain "fills" or other changes; and (b) in some of the prior art songs, the drum parts contain "fills" or other changes.  (A "fill" is a combination of notes on different parts of the drum set in a single beat.  SUF, ¶¶ 84-85.)  Payne, however, is simply wrong once again.  As he admitted at his deposition, measures 38, 40, 42, 44, 48 and 50 of "Zimba Ku" all contain drum fills.  *Id.*, ¶ 86.  Moreover, the subsequent section of "Zimba Ku" from 3:28 to 3:45 contains an additional two drum fills.  *Id.*, ¶ 86.  Further, fourteen measures of "Zimba Ku" all contain rhythms which are different from the drum set parts in the other measures of "Zimba Ku."  *Id.*, ¶ 87.

*Sixth*, Payne attempted to draw a distinction between Defendants' prior art and the pertinent measures in the songs "Zimba Ku" and "Price Tag" by claiming that in some of those prior art songs, the rhythm of sixteen consecutive 16th notes which is performed on a hi-hat cymbal in "Zimba Ku" and "Price Tag" is instead performed on a tambourine.  SUF, ¶ 88.  But a composition does not change based upon the instrument which performs that composition; for example, "Mary Had a Little Lamb" is the same composition regardless of whether it is performed on a clarinet or a trumpet.  SUF, ¶ 89.  Payne admitted as much.  *Id.*

*Seventh*, Payne tried to distinguish some of Defendants' prior art from "Zimba Ku" and "Price Tag" by claiming that in some of those prior art songs, the rhythm of sixteen consecutive 16th notes is performed on "open" hi-hats, as opposed to "closed" hi-hats, as in "Zimba Ku" and

"Price Tag".  SUF, ¶ 90.  Payne's attempted distinction is meaningless, because the decision of whether to "open" or "close" a hi-hat is an element of *performance*, and not a *compositional* element.  As Payne admitted at his deposition, a 16th note on an open hi-hat and a 16th note on a closed hi-hat have the same rhythmic value; *i.e.*, they are both 16th notes.  *Id.*, ¶ 91.

*Eighth*, Payne attempted to distinguish some of Defendants' prior art by claiming that in those songs, the hi-hat notes are not accented, while in "Zimba Ku" and "Price Tag", every other hi-hat note is accented.  (An accent is an emphasis on a note that makes it louder than an unaccented note.  SUF, ¶¶ 92-93.)  Again, making a note louder or quieter is an element of *performance*, and not a *compositional* element.  As Payne admitted, an accented 16th note and an unaccented 16th note have the same rhythmic value; *i.e.*, they are both 16th notes.  *Id.*, ¶ 94. This "distinction" also does nothing to undercut the relevance of Defendants' prior art.

**B.**     **"Zimba Ku" and "Price Tag" Have Substantial Rhythmic Differences**

In evaluating a claim of substantial similarity, the Court must assess the differences between the works at issue.  *Warner Bros., Inc. v. American Broad. Cos.*, 654 F.2d 204, 211 (2d Cir. 1981).  This is particularly so where the differences between the works exist in the very respects in which they are claimed to be similar – here, in their rhythmic elements.  *Attia v. Society of the N.Y. Hosp.*, 201 F.3d 50, 58 (2d Cir. 1999) ("Where, as here, a defendant's work is dissimilar in the very respects in which it is claimed to be similar, that can obviously influence the conclusion as to whether the claimed similarity in fact exists or is substantial.").

In his expert reports, Dr. Ferrara discusses many significant and unrebutted rhythmic differences between "Zimba Ku" and "Price Tag".[20]  *See supra*, Section III.  Payne admits the existence of each of these differences.  *Id.*  These differences, coupled with the common nature

---

[20] Again, the only similarities Plaintiff and its expert claims exist are rhythmic. The other elements of the compositions, such as harmony, melody and lyrics, are entirely different.

of the rhythmic similarities identified by Plaintiff, compels the conclusion that no reasonable jury could find the two songs substantially similar. *See Durham Industries, Inc. v. Tomy Corp.*, 630 F.2d 905, 913 (2d Cir. 1980) ("numerous differences tend to undercut substantial similarity." (citation omitted)). Summary judgment is also warranted in Defendants' favor for this reason.

## C. The "Total Concept And Feel" Of Each Song Is Completely Different

As discussed above, consideration of the only components of "Zimba Ku" and "Price Tag" that Plaintiff even claims are similar readily reveals that those components are all trite and commonplace, and therefore cannot support a finding a substantial similarity. Consideration of the "total concept and feel" of those two songs only reinforces this conclusion. *See Velez*, 2007 U.S. Dist. Lexis 5495, at *38 ("While [the substantial similarity] analysis begins with a consideration of the components of the songs viewed in isolation, the Court must also consider whether the 'total concept and feel' of the works exhibit substantial similarities.").

Other than the few rhythmic similarities discussed above, neither Plaintiff nor its expert makes any attempt to distinguish the unrebutted evidence demonstrating the numerous substantial differences between "Zimba Ku" and "Price Tag." There are significant structural similarities between the two songs; for example, there is only one verse in "Zimba Ku," but there are three verses in "Price Tag." Ferrara Report, Movit Decl., Ex. 5, at p. 7. The feel of the songs is also different: "Zimba Ku" is recorded in a minor key (C minor), while "Price Tag" is recorded in a major key (F Major). *Id.*, at p. 8. The melody of "Zimba Ku" is entirely different from "Price Tag," as are the lyrics. *Id.*, at p. 44. The combination of these differences renders the total concept of feel of "Zimba Ku" completely and undeniably distinct from "Price Tag". For that additional reason, Plaintiff cannot demonstrate substantial similarity between the two songs, and Defendants' motion for summary judgment should be granted.

Simply listening to the two songs is all that is required to recognize these obvious

differences.  *See Edwards v. Raymond*, 2014 U.S. Dist. LEXIS 71482, at *17 (S.D.N.Y. May 23, 2014) ("A comparison of the sound recordings of the two songs confirms that their music is not substantially similar."); *Velez*, 2007 U.S. Dist. LEXIS 5495, at *40 ("Simply put, [the songs at issue] are two starkly different pieces of music, and plaintiff has failed to meet his burden … to show a reasonable jury could conclude otherwise. Therefore, plaintiff cannot demonstrate improper appropriation by [defendant], and his infringement claim must be dismissed.").

### D.    Plaintiff's "Sampling" Argument Is An Irrelevant Diversionary Tactic

Defendants expect that Plaintiff will attempt to oppose this Motion by citing the opinion of a recording engineer named Peter Becker ("Becker"), who Plaintiff hired to opine that the sound recording of "Zimba Ku" was purportedly "sampled" in creating the sound recording of "Price Tag".  This Court should reject any such attempt.  While Defendants emphatically dispute these untrue allegations of "sampling", Becker's opinion is wholly irrelevant in all events given Plaintiff's admission that it does not own the sound recording of "Zimba Ku".  SUF, ¶ 3.  *See, e.g., Newton,* 204 F. Supp. 2d at 1252 (in case where plaintiff claimed that defendants' sample of a sound recording of his composition infringed his copyright in that composition, the court granted summary judgment to defendants on the ground that no protectable expression had been copied, and held that "whether Defendants' sample sounds like Plaintiff's performance … is not relevant to the court's inquiry" because plaintiff did not own or claim infringement of the sound recording).  Plaintiff's proffering of Becker's opinion plainly constitutes an attempt to confuse the legitimate issues before the Court and increase Defendants' costs, given the opinion's irrelevance, as well as the fact that Plaintiff's counsel did not contest the numerous prior statements to the Court by Defendants' counsel that no such sample is present in "Price Tag".

In any event, Becker conceded at his deposition that it would be speculation for him to determine what elements were used to create the "Price Tag" recording (or the "Zimba Ku"

24

recording, for that matter) given, *inter alia*, that he was not present at the recording session. (Becker Dep. Tr., Movit Decl. Ex. 18, at 109:23-111:9.)  Indeed, when confronted with the opinion of Defendants' expert recording engineer Paul Geluso empirically demonstrating the absence of a "Zimba Ku" sample in the "Price Tag" recording (*see generally* Geluso Reports, Movit Decl., Exs. 16-17), Becker was forced to tacitly concede the same, by asserting speculative "hypotheses" that a "Zimba Ku" sample *could have* existed in a preliminary version of the "Price Tag" recording but then *may have been* "covered up entirely", "muted" or even "deleted" from the final "Price Tag" recording.  Becker Rebuttal Report, Movit Decl., Ex. 9, at p. 13.[21]

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court grant their motion for summary judgment, enter an order dismissing this case in its entirety, and award such other and further relief as this Court deems just and proper.[22]

Dated: October 6, 2014          MITCHELL SILBERBERG & KNUPP LLP
       New York, New York       By:    */s/ Christine Lepera*
                                       Christine Lepera (ctl@msk.com)
                                       Jeffrey M. Movit (jmm@msk.com)
                                       Bradley Mullins (bym@msk.com)
                                       12 East 49th Street, 30th Floor
                                       New York, New York 10017-1028
                                       (212) 509-3900 (Tel.); (212) 509-7239 (Fax)
                                       *Attorneys for Defendants*

---

[21] Accordingly, even if *arguendo* Plaintiff owned the "Zimba Ku" recording, Becker's opinion could not create an issue of fact given the well-established rule that "conjecture or speculation is insufficient" to survive summary judgment in a copyright infringement action.  *Tisi*, 97 F. Supp. 2d at 547 (citing *Cox v. Abrams*, No. 93 Civ. 6899, 1997 WL 251532, at *3 (S.D.N.Y. May 14, 1997)).  *See also Vargas v. Transeau*, 514 F. Supp. 2d 439, 446-447 (S.D.N.Y. 2007) ("Plaintiffs' case on summary judgment boils down to the contention that summary judgment may be avoided by producing any expert witness who testifies that one sound was sampled from another, regardless of how conclusory the statement may be and regardless of whether it contradicts the testimony of Plaintiffs' other witnesses.  That is not the law.").

[22] Defendants reserve all rights and remedies following the dismissal of this action, including but not limited to seeking attorneys' fees and costs pursuant to Section 505 of the Copyright Act.