UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NEW OLD MUSIC GROUP, INC.,                    :
                                              :
                        Plaintiff,            :          Docket No. 13 CV 9013
                                              :
            -against-                         :
                                              :
LUKASZ GOTTWALD, p/k/a DR. LUKE, *et. al.*    :
                                              :
                        Defendants.           :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

SCHWARTZ & PONTERIO, PLLC
Brian Levenson
Matthew F. Schwartz
*Attorneys for Plaintiff*
134 West 29th Street, Suite 1006
New York, NY 10001
(212) 714-1200

# TABLE OF CONTENTS

PRELIMINARY STATEMENT …………………………………………………...  1

BACKGROUND FACTS REGARDING ZIMBA KU AND PRICE TAG …………...  2

SUMMARY JUDGMENT STANDARD …………………………………………..  2

ARGUMENT

I.      Unsworn Expert Reports Are Inadmissible ………………………………….. 3

II.     Applicable Law
        A.      Copyright Protection Only Requires that the Work be Original to the
                Author, Not that it be Novel ……………………………………………… 3
        B.      There is No Prior Art Doctrine in Copyright Law …………………………5
        C.      A Work May Be Copyrighted Even if It Consists Solely of a Combination
                of Pre-existing Elements …………………………………………………...5

III.    The Drum Composition  of Zimba Ku Contains Sufficient Original Expression
        To Be Protected By Copyright ………………………………………………….6
        A.      Zimba Ku's Hi-Hat Element is Creative and Not Found in
                Prior Works Cited…………………………………………………...  8
        B.      Zimba Ku's Snare Element is Creative and Not Found in
                Prior Works Cited……………………………………………….............  11
        C.      Zimba Ku's Original Bass Drum Element is Syncopated, Complex
                and Difficult ……………………………………………………………… 11
        D.      Zimba Ku's Tempo is Not Found in Prior Works Cited …………………  12
        E.      Zimba Ku's Break Beat is Not Found in Prior Works Cited ……………...  13
        F.      Zimba Ku's Vamp Form is Not Found in Prior Works Cited ……………  13
        G.      Zimba Ku's Original Drum Composition is Creative and Protectable …….14

IV.     Unauthorized Copying of Zimba Ku ……………………………………………. 15
        A.      Zimba Ku's and Price Tag's Identical Appearance on Paper is Probative
                Similarity …………………………………………………………………. 15
        B.      Direct Evidence of Copying Zimba Ku in Price Tag ……………………….16
        C.      Zimba Ku and Price Tag Play Perfectly at the Same Time; Differences
                Cannot Be Detected ……………………………………………………… 20

V.      Price Tag Bears Substantial Similarity to Protected Expression in Zimba Ku …….21
        A.      Fragmented Literal Similarity is the Proper Analysis………………………21

VI.     Cases Cited by Defendants Are Inapplicable ……………………………………24

VII.    Disagreement Between Opposing Experts Makes Summary Judgment
        Inappropriate ……………………………………………………………............24

CONCLUSION ……………………………………………………………............  25

## TABLE OF AUTHORITIES

| Case | Page(s) |
|---|---|

*Alfred Bell & Co. v. Catalda Fine Arts, Inc.,*
    191 F.2d 99 (2d Cir. 1951) …………………………………………….. 4-5, 14

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) …………………………………………………..3

*Arnstein v. Porter*,
    154 F.2d 464, 468 (2d Cir.1946)……………………………………………15

*Berk v. St. Vincent's Hosp. and Med. Ctr.,*
    380 F.Supp.2d 334 (S.D.N.Y.2005) ……………………………………… 3

*BMS Entertainment v. Bridges,*
    2005 WL 1593013, at *4 (S.D.N.Y. 2005) ……………………………… 6, 15

*Bridgeport Music, Inc. v. UMG Recordings, Inc.*,
    585 F.3d. 267(6th Cir. 2009) ………………………………….......    22

*Business Trends Analysts, Inc. v. The Freedonia Group, Inc.,*
    700 F.Supp. 1213, 1231 (S.D.N.Y.1988) ………………………………...   4

*Chafir v. Carey,*
    2007 WL 2702211 (S.D.N.Y. 2007) ……………………………….…….… 5

*College Entrance Book Co. v. Amsco Book Co.*,
    119 F.2d 874 (2d Cir. 1941)………………………………………………... 19

*Currin v. Arista Records, Inc.*,
    724 F.Supp.2d 286 (D.Conn. 2010)……………………………………… 24

*Diamond Direct, LLC v. Star Diamond Group, Inc.*,
    116 F. Supp. 2d 525 (S.D.N.Y. 2000) …………………………………… 4

*Eckes v. Card Prices Update*,
    736 F.2d859 (2d Cir. 1984)……………………………………………….....19

*Ellis v. Diffie,*
    177 F.3d 503, 506 (6th Cir.1999) ………………………………………… 8

*Elsmere Music, Inc. v. National Broadcasting Co., Inc.,*
    482 F.Supp. 741 (S.D.N.Y.), aff'd. 623 F.2d 252 (2d Cir.1980)……........... 21

*Feist Publications, Inc. v. Rural Tel. Serv. Co.,*
    499 U.S. 340 (1991) ……………………………….......................... 4, 5, 7, 9, 15,
                                                                                          16, 23

| Case | Page(s) |
|---|---|

*Fred Fisher Inc. v. Dillingham,*
298 F.145 (S.D.N.Y. 1924) …………………………………………….. 5, 8

*Gaste v. Kaiserman,*
863 F.2d 1061, 1066 (2nd Cir. 1988) ……………………………………… 4

*Glowczenski v Taser Intern. Inc.,*
2010 WL 1957289 (E.D.N.Y. 2010) ……………………………………….3

*Goldberg v. Cameron,*
787 F. Supp. 2d 1013 (N.D. Cal. 2011) …………………………………... 8

*Glover v. Austin,*
289 Fed.Appx. 430 (2008)(2nd Cir. 2008) ……………………….......... 12

*Gotlin v. Lederman,*
616 F.Supp.2d 376 (E.D.N.Y.2009) ……………………………………… 3

*Grand Upright Music Ltd. v. Warner Bros. Records, Inc.,*
780 F. Supp.182 (1991) ……………………………………………………… 20

*Jarvis v. A & M Records,*
827 F.Supp. 282, 289 (D.N.J.1993)…………………………………….. 21, 22

*Jean v. Bug,*
2002 WL 287786 (S.D.N.Y. 2002)…………………………………..……… 24

*Jorgenson v. Epic/Sony Records,*
351 F.3d. 46 (2d Cir. 2003)……………………………………………………15, 16

*Kerzer v. Kingly Mfg.,*
156 F.3d 396, 400 (2d Cir. 1998) …………………………………………… 2

*Knitwaves, Inc. v. Lollytogs Ltd.,*
71 F.3d 996 (2nd Cir.1995) ………………………………………………5, 7, 15

*L. Batlin & Son, Inc. v. Snyder,*
536 F.2d 486 (2d Cir. 1976) …………………………………………… 4-5

*Lessem v. Taylor,*
766 F.Supp.2d 504 (S.D.N.Y 2011) ……………………………………… 5, 8, 9, 24

*Levine v. McDonald's Corp.,*
735 F.Supp. 92 (S.D.N.Y. 1990) ……………………………….............. 5, 12, 15, 24

*Matthew Bender & Co., Inc. v. West Pub. Co.,*
158 F.3d 674, 681 (2nd Cir. 1998)…………………………………………..  24

iii

*Newton v. Diamond,*
 204 F.Supp 2d 1244 (C.D.Cal 2002)……………………………………… 16

*Newton v. Diamond,*
 388 F.3d 1189 (9th Cir. 2003)………………………………………….. 21

*Nora Beverages v. Perrier Group of America,*
 164 F.3d 736 (2d Cir.1998) ……………………………………………… 3

*Ringgold v. Black Entertainment Television, Inc.,*
 126 F.3d 70, 75 (2d Cir.1997)………………………………………….... 15, 21

*Santrayll v. Burrell,*
 1996 WL134803 (S.D.N.Y. 1996) …………………………………………5

*Security Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.,*
 391 F.3d 77 (2d Cir. 2004) …………………………………………………2

*Sheldon v. Metro-Goldwyn Pictures Corporation,*
 81 F.2d. 49 (2nd Cir. 1936)………………………………………………... 23

*Swirsky v. Carey,*
 376 F.3d 841, 853 (9th Cir. 2004)…………………………………………  8

*Sub-contractors Register, Inc. v. McGovern's Contr. & Builders Manual, Inc.,*
 69 F.Supp. 507, 510 (S.D.N.Y. 1946)…………………………………...  19

*Tin Pan Apple, Inc. v Miller Brewing Co., Inc.,*
 1994 WL 62360…………………………………………………………  24

*Tufamerica v. Diamond,*
 968 F.Supp.2d 588 (S.D.N.Y. 2013)………………………………………  21

*Ulloa v Universal Music and Video Distrib. Corp.,*
 2004 WL 840279 (S.D.N.Y. 2004) ……………………………………... 5, 8

*Ulloa v. Universal Music & Distribution, Corp.,*
 303 F.Supp.2d 409 (S.D.N.Y. 2004)………………………………………  24

*Repp v. Webber,*
 132 F.3d 882 (2d Cir.1997)………………………………………………..  24

*Vargas v. Pfizer,*
 418 F.Supp.2d 369 (S.D.N.Y. 2005) ……………………………………… 6, 8, 25

*Velez v. Sony Discos,*
 2007 WL 120686 (S.D.N.Y. 2007)………………………………………... 24

| Case | Page(s) |
|------|---------|

*Williams v. Broadus,*
　　2001 WL 984714 (S.D.N.Y. 2001)……………………………………... 21, 22

*Winter v. U.S.,*
　　196 F.3d 339 (2d Cir. 1999) …………………………………………. 2

## Statutes

17 U.S.C. § 410(c) …………………………………………...…………………… 4

## Treatises

M. Nimmer & D. Nimmer, *Copyright* (1990) § 1.08[C][1] …………………... 4

Nimmer § 2.01………………………………………...…………………………… 5

Nimmer § 13.03…………………………………...…………………………… 21, 23

# PRELIMINARY STATEMENT

Zimba Ku is a funky drum song. The star of Zimba Ku is its signature drums, a combination of complex and cutting edge patterns on the hi-hat, snare drum and bass drum. The drums are featured up-front in virtual isolation to start to the song and the funky drum set rhythm insistently drives the song throughout. Zimba Ku's unique and complex groove is famous and was acclaimed on a collection break beats and grooves, compiled by major label, Warner Bros. Records, <u>Right On! Break Beats and Grooves From the Atlantic and Warner Vaults, 1967-1975.</u>

The pop song, Price Tag, released in 2011, stole the drums from Zimba Ku and rode them to a number one hit. Not only are the drum compositions in Zimba Ku and Price Tag identical, but there is compelling evidence that Zimba Ku's drums were sampled in the creation of the Price Tag recording. This evidence includes the presence of the same human drumming and engineering variations in both recordings. In any event, even if the Court cannot conclude that Zimba Ku was sampled, there is no dispute that the drum compositions are identical. To avoid liability, defendants have misstated the law and facts. Defendants rely solely on unsworn expert reports which claim to have found similarities between Zimba Ku and songs that pre-date it, which they call 'prior art' – a patent law doctrine that has no application to copyright law. Regardless of the admissibility of these reports, defendants fail to cite a single measure of any song that has the same drum composition as Zimba Ku. While the songs cited may have one or two of the same drum set elements, none of them have the same combination of drum set elements that made Zimba Ku a highly acclaimed funk drum groove.

As demonstrated, herein, Zimba Ku is a unique combination of several creative and cutting edge elements. It is the combination of these creative elements that is protected by copyright; it is the combination of these elements that defendants stole and profited from. There

is no question that defendants misappropriated an original and copyrightable part of Zimba Ku and defendants' motion for summary judgment must be denied.

## BACKGROUND FACTS

The facts relevant to this motion are set forth in the Declarations of Lenny Goldsmith, Brian Levenson, James Payne, and Peter Becker. Goldsmith independently created the musical work Zimba Ku in 1975. Goldsmith Dec., ¶¶ 4-5. The drum part was the first part of Zimba Ku that Goldsmith wrote and it was the basis for the entire musical work and he did not copy, refer or otherwise listen to any other song. Goldsmith Dec., ¶¶ 5-6. No other song created prior to Zimba Ku contains an identical drum composition for even one measure and the defendants have failed to identify any prior work that has all the Zimba Ku drum elements. Payne Dec., ¶ 101. In 2011, the musical work, Price Tag was released and exploited by the defendants. SUF, ¶ 5.[1] Price Tag contains the identical drum composition as Zimba Ku and there is evidence in the recordings that Zimba Ku was sampled in the creation of Price Tag. SUF, ¶¶ 6, 108-114.

## SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *e.g., Winter v. U.S.*, 196 F.3d 339, 346 (2nd Cir. 1999). When examining the evidence, the Court should resolve all factual ambiguities and grant all inferences in favor of the non-moving party and must construed the evidence liberally in favor of the party opposing the motion. *See, e.g., Security Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2nd Cir. 2004); *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2nd Cir. 1998). "If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." *Id.* at

---

[1] "SUF" refers to Plaintiff's response to the Defendants' Rule 56 statement.

82-83; *see, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To defeat summary judgment, the non-moving party need offer only enough evidence to enable a reasonable jury to return a verdict in its favor. *Id.* Here, a reasonable jury could fine that Zimba Ku's drum composition is original and therefore protectable, that Zimba Ku was copied, and that Price Tag bears substantial similarity to Zimba Ku so defendants' motion must be denied.

## POINT I

## UNSWORN EXPERT REPORTS ARE INADMISSIBLE

As a threshold matter, defendants' motion must be denied because it not supported by admissible evidence. On a summary judgment motion, a "district Court properly considers only evidence that would be admissible at trial," as required by Rule 56. *See Nora Beverages v. Perrier Group of America,* 164 F.3d 736, 746 (2nd Cir.1998). Applying this rule, " '[c]ourts in this Circuit have uniformly held that unsworn expert reports do not satisfy the admissibility requirements of Fed. R. Civ. P 56(e), and cannot be used [on] a summary judgment motion without additional affidavit support.' " See *Gotlin v. Lederman*, 616 F.Supp.2d 376, 389 (E.D.N.Y.2009) (quoting *Berk v. St. Vincent's Hosp. and Med. Ctr.,* 380 F.Supp.2d 334, 352 (S.D.N.Y.2005)). Defendants' motion must be denied because it not supported by any admissible evidence. *Glowczenski v Taser Intern. Inc.,* CV04-4052(WDW), 2010 WL 1957289 (E.D.N.Y. 2010)(unsworn expert reports may not be considered on a motion for summary judgment).

## POINT II

## APPLICABLE LAW

**A.      Copyright Protection Only Requires that the Work be Original to the Author, Not that it be Novel**

The Copyright Act provides that a certificate of registration "shall constitute *prima facie* evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. §

410(c). The certificate "establishes a presumption of originality in the work registered." *Business Trends Analysts, Inc. v. The Freedonia Group, Inc.,* 700 F.Supp. 1213, 1231 (S.D.N.Y.1988).

"To qualify for copyright protection, a work must be original to the author." *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991) (citations omitted). "Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity." *Id.* at 345. "[T]he requisite level of creativity is **extremely low**; even a slight amount will suffice. The vast majority of works make the grade quite easily, as they possess some creative spark, 'no matter how crude, humble or obvious' it might be." *Id.* at 345 (quoting 1 M. Nimmer & D. Nimmer, *Copyright* § 1.08[C][1] (1990)).

"Sufficient originality for copyright purposes amounts to **little more than a prohibition of actual copying**." *Gaste v. Kaiserman*, 863 F.2d 1061, 1066 (2nd Cir. 1988); *Alfred Bell & Co. v. Catalda Fine Arts, Inc.*, 191 F.2d 99, 102-03 (2nd Cir. 1951) (citations omitted). All that is needed … is that the 'author' contributed **something more than a 'merely trivial' variation**, something recognizably 'his own.'" *Id.*, at 102-03. "[T]he 'quantum of originality necessary to invoke copyright protection is **very small**.'" *Diamond Direct, LLC v. Star Diamond Group, Inc.*, 116 F. Supp. 2d 525, 528-29 (S.D.N.Y. 2000).

Novelty is not a requirement for copyright protection. *Boisson v. Banian, Ltd.*, 273 F. 3d 262, 270 (2nd Cir. 2001) ("Absent evidence of copying, an author is entitled to copyright protection for an independently produced original work despite its identical nature to a prior work, because it is independent creation, and not novelty that is required."). Because novelty is not required, "[t]he 'author' is entitled to a copyright if he independently contrived a work completely identical with what went before …." *Alfred Bell*, 191 F.2d at 103; *L. Batlin & Son, Inc. v. Snyder*,

536 F.2d 486, 490 (2nd Cir. 1976) (Originality "need not be invention in the sense of striking uniqueness, ingeniousness, or novelty …").

**B.      There is No Prior Art Doctrine in Copyright Law**

Defendants cite a number of musical works pre-dating Zimba Ku – "prior art" – to support their claim that Zimba Ku is not original. Def. Memo, pp. 5-7, 14-24. The law is clear that originality, and **not prior art**, determines whether a work is protectable. *See* 1 Nimmer & Nimmer, *supra,* § 2.01[A], at 2–9. Whether a piece of music incorporates components from **prior musical works is irrelevant** to the question of whether the subject work is original.[2] *Fred Fisher Inc. v. Dillingham,* 298 F.145 (S.D.N.Y. 1924). See *Ulloa v Universal Music and Video Distrib. Corp.,* 2004 WL 840279 (S.D.N.Y. 2004); *Lessem v. Taylor*, 766 F.Supp.2d 504 (S.D.N.Y. 2011).

**C.      A Work May be Copyrighted Even if It Consists Solely of a Combination of Pre-Existing Common Elements**

A combination of pre-existing elements qualifies for copyright protection, as long as the author's selection and arrangement "display[s] some minimal level of creativity." *Feist*, 499 U.S. at 358. Further, a work "may be copyrightable even though it is entirely a compilation of unprotectable elements." *Knitwaves, Inc. v. Lollytogs Ltd.,* 71 F.3d 996, 1003–04 (2nd Cir.1995). This is black letter law and is applied equally to music cases. See *Santrayll v. Burrell*, 1996 WL134803 (S.D.N.Y. 1996)("the repetition of the non-protectable word "uh-oh" in a distinctive rhythm comprises a sufficiently original composition to render it protectable by the copyright laws."); *Levine v. McDonald's Corp*., 735 F.Supp. 92, 98 (S.D.N.Y. 1990) ("plaintiffs' use of various non-copyrightable [musical] elements is itself copyrightable if they have been arranged in a unique and recognizable way.").

---

[2] *Chafir v. Carey*, 2007 WL 2702211 (S.D.N.Y. 2007) cited by defendants is not authority that three 'prior art' songs renders a work unprotectable. To the contrary, *Chafir* held that where the element was found in three other songs, and there was no direct evidence of copying, the plaintiff was required to prove access. Access is not relevant to this motion because **no fact discovery has taken place in this case**. Levenson Dec., ¶ 12.

The case of *Vargas v. Pfizer,* 418 F.Supp.2d 369 (S.D.N.Y. 2005) is directly on point. In *Vargas*, the plaintiff claimed that the drum composition in Pfizer's commercial for Celebrex infringed his original drum composition which consisted of a drum pattern looped twenty-seven times. The *Vargas* defendants, mirroring the defendants in this case, sought summary judgment, arguing that "plaintiff's composition lacked originality because, as a 'one-bar drum rhythm,' it is a common groove track whose elements are found in elementary drum instruction books and frequently used by musical artists." *Id.* at 372. The *Vargas* defendants argued "that the abundance of similar compositions in other musical works demonstrates lack of originality." *Id.*

The *Vargas* court rejected these arguments and held that **the key question** was whether "[plaintiff's "composition] 'possesses at least some **minimal degree of creativity**.'" *Id.* at 372. Further, and importantly for our purposes in this case, the *Vargas* court held that, even if established, "the presence of similar compositions or elements of the composition in other works is irrelevant in assessing originality," and that "[t]ypically, '[w]hen the originality of a copyrighted work is at issue, it becomes a question of fact for the jury to resolve." *Id.* at 372.

The Court should follow Vargas and reject defendants' arguments here because, even if Zimba Ku contains some elements similar to prior works, there is no question that Zimba Ku is sufficiently original to be afforded copyright protection.

## POINT III

### THE DRUM COMPOSITION OF ZIMBA KU  CONTAINS SUFFICIENT  ORIGINAL  EXPRESSION  TO  BE  PROTECTED  BY  COPYRIGHT

It is undisputed that Lenny Lee Goldsmith independently created Zimba Ku and did not copy any other work in doing so. Goldsmith Dec., ¶¶ 4-5. By way of Goldsmith's authorship, Zimba Ku is an original work and its drum composition is entitled to copyright protection by virtue of its author's unique selection, coordination and arrangement of elements, specifically, (a)

a hi-hat pattern of sixteen alternately accented 16th notes on the closed hi-hat ("hi-hat element");

(b) a five-note syncopated bass drum pattern with 16th note double strokes ("bass drum

element"); (c) a snare pattern consisting of notes on the 2 and 4 and an end-of-measure drag

("snare drum element"); (d) a tempo of 87-88 beats per minute; (e) featured in virtual isolation in

the introduction (the "break beat"); (f) repeated without fills or changes for extended periods (the

"vamp"). Payne Dec., ¶ 14. Goldsmith's independent contributions more than satisfy the

"extremely low" creativity requirement, even if defendants contend otherwise. *Feist*, 499 U.S. at

358; *Knitwaves,* 71 F.3d 996, 1003–04.

The identical combination of elements in (a) – (f) was copied in Price Tag. Payne Dec., ¶

15. The drum composition of 87 measures of Zimba Ku and 72 measures Price Tag are below:



The drum compositions in the two works are unquestionably identical. Payne Dec., ¶¶ 16-17.

Although clearly identical, defendants claim that Price Tag cannot infringe Zimba Ku,

because three songs that pre-date Zimba Ku, Me and Bobby McGee, ABC, and I Will Find A

Way (which they call "prior art"), have a similar combination of hi-hat, snare and bass drum

elements notated in the charts above. Def. Memo, pp. 17-18. Defendants argue this permits them,

and anyone else, to lawfully copy Zimba Ku's drum composition. Defendants' claims are

meritless, legally and factually.

First, it is well settled that, "it is [no] defense that there was in the prior art substantially the same figure." *Fred Fisher,* 298 F.145 (L. Hand);[3] *Ulloa,* 2004 WL 840279 (summary judgment denied) (14 examples of prior music works, including pieces by Mozart and Beethoven, not relevant in assessing whether a composition is sufficiently original to warrant copyright protection"); see *Vargas,* 418 F.Supp.2d 369 ("presence of similar elements of the composition in other works is irrelevant in assessing in copyright"); *Lessem*, 766 F.Supp.2d 504 (summary judgment denied where 101 musical works with same lyric identified).

Second, defendants undertake "distorted musicological analysis" to find non-existent similarities between Zimba Ku and the purported 'prior art'. *Swirsky v. Carey*, 376 F.3d 841, 853 (9th Cir. 2004).[4] Defendants' arbitrarily limit their analysis to select parts of Zimba Ku's drum composition to distort the degree of similarity between Zimba Ku and the purported 'prior art'. Defendants have also omitted analysis of identical elements in Zimba Ku and Price Tag that are not found in the three songs they rely on, i.e., tempo, accents, and vamps.[5]

## A.        Zimba Ku's Hi-Hat Element Is Creative and Not Found in the Prior Works Cited

Zimba Ku's hi-hat pattern is sixteen alternately accented 16th notes on the closed hi-hat. 16th notes on the closed hi-hat were a breakthrough in modern drumming and cutting edge at the

---

[3] At issue in that case, was the copying of an ostinato, or a "constantly repeated figure which produces the effect of a rolling underphrase for the melody, **something like the beat of a drum** or tom-tom . . . [i]t consists of only eight notes, written in two measures and repeated again and again, with no changes." *Fred Fisher,* 298 F.145.

[4] For a musical composition, "courts have taken account of additional components of musical compositions, including melody, harmony, ***rhythm***, pitch, ***tempo***, ***phrasing***, structure, chord progressions, and lyrics." *Swirsky v. Carey*, 376 F.3d 841 (9th Cir. 2004) (citing *Ellis v. Diffie*, 177 F.3d 503, 506 (6th Cir.1999)). In *Swirsky*, the court also recognized that "timbre, tone, spatial organization, consonance, dissonance, ***accents***, ***note choice***, ***combinations***, ***interplay of instruments***, bass lines… can all be elements of a musical composition." *Id.* at 849. "To pull these elements out of a song individually, without also looking at them in combination, is to perform an incomplete and distorted musicological analysis." *Id.* at 848.

[5] Defendants also rely on the book, *The Drumset Musician*, published in 1997, twenty-two years after Zimba Ku was written. This book has no significance as a matter of law. See *Lessem*, 766 F.Supp.2d 504, 513 (song created two years after plaintiffs' work "cannot be used to show that plaintiffs did not independently create [their work] and therefore cannot render [their work] unoriginal.").

time Zimba Ku was written. <u>Payne Dec.</u>, ¶ 20. Playing steady 16th notes on the closed hi-hat at a

tempo as fast as Zimba Ku (87-88 bpm) is not easy to do and very few drummers at the time

Zimba Ku was written could do it.[6] <u>Payne Dec.</u> ¶ 21. Defendants concede that ABC and I Will

Find A Way do not have 16th notes on the hi-hat.[7] <u>Ferrara Initial Report</u>, ¶¶ 64, 68. Dr. Ferrara's

transcriptions of ABC and I Will Find A Way are below, with the 8th note hi-hat pattern circled:



<u>Ferrara Initial Report</u>, p. 21 (Musical Example 4).

Defendants concede that ABC and I Will Find A Way have different hi-hat patterns, but

claim that 16th tambourine notes played in those songs are the same as the 16 consecutive closed

hi-hat notes in Zimba Ku. <u>Def. Memo</u>, p. 15, 18. This claim has no merit. <u>Payne Dec.</u>, ¶ 24.

Tambourine "attacks" (sound produced when struck) are more legato (longer duration) than

closed hi-hats; the tambourine jingles ring through into the next attack, while the closed hi-hats

attacks are staccato (short distinct separate sounds). <u>Payne Tr.</u>, p. 53, l. 21-23. The different

---

[6] Illustrating this, the book cited by defendants' own expert, Steven Wolf, <u>Rockin' Bass Drum</u> from 1969, has 100 examples of contemporary drum beats - none of which have 16th notes on the hi-hat. <u>Payne Dec.</u>, ¶ 22.

[7] 8th note hi-hat patterns are generally considered to be rock, not funk patterns. <u>Payne, Dec.</u>, ¶ 23. 8th notes establish a very different feel from continuous 16th notes, more open and less insistent. <u>Payne, Dec.</u>, ¶ 23.

characteristics of the sound create different rhythms. That there are sixteen attacks on a tambourine is immaterial; they are sixteen different attacks. <u>Payne Dec., ¶¶ 25-26.</u>

Like Zimba Ku, Me and Bobby McGee, has sixteen 16th notes on the hi-hat. The hi-hat pattern in that song, however, is <u>open</u> on the last two notes of the measure, as defendants' concede. <u>Ferrara Initial Report</u>, p. 21 (Musical Example 4). Open hi-hats are compositionally different than closed hi-hat notes and produce different, more legato sounds and rhythms (even more than tambourines). <u>Payne Errata</u>, p. 3 (p. 53, lines 16-24). This difference in sound is why the open hi-hat notes are notated differently in a composition (<u>Payne Errata</u>, p. 3 (p. 53, lines 16-24); <u>Payne Dec.</u>, ¶ 28) as illustrated in Dr. Ferrara's transcription:



Defendants argue, without citation to any source, including their own expert reports, that "the decision whether to 'open' or 'close' a hi-hat is an element of performance and not a compositional element." <u>Def. Memo</u>, pp. 21-22. This unsubstantiated statement is false and reveals a misunderstanding of drumming and basic drum composition. <u>Payne Dec.</u>, ¶ 31. The distinct double splash of the open hi-hats at the end each measure in Me and Bobby McGee sharply contrasts with the continuous groove in Zimba Ku and Price Tag. <u>Payne Dec.</u>, ¶ 32.

Further, the closed hi-hats in Zimba Ku and Price Tag are alternately accented. <u>Payne Dec.</u>, ¶ 34. An accent is a *compositional* element that determines the variation in volume of any note in a song and are notated with a sideways V above the note in a composition. <u>Payne Dec.</u>, ¶ 34, see charts on p. 7, *supra*. The alternation of accented and unaccented notes sets up a counter

rhythm and gives the composition an intensity and trance-like quality. Payne Dec., ¶ 35. This is a very different feel than when no notes are accented, as in Me and Bobby McGee, ABC and I Will Find A Way. Payne Dec., ¶ 36. Accordingly, none of the prior works cited by the defendants have the same hi-hat element as Zimba Ku.[8] Payne Dec., ¶ 38.

## B.     Zimba Ku's Snare Element is Creative and Not Found in the Prior Works Cited

The snare drum element in Zimba Ku consists of snare drum notes on the 2 and 4 and end-of-measure drag. Payne Dec., ¶ 39. A drag is an indeterminate number of notes played on the snare by dragging the stick along the drum head. Payne Dec., ¶ 40. The end-of-measure drag is the most creative and distinctive part of Zimba Ku's snare element; it links measures and skips the beat along. Payne Dec., ¶ 42.  It is undisputed that Me and Bobby McGee, ABC and I Will Find a Way do not have end-of-measure drags. Payne Dec., ¶ 43; Ferrara Initial Report, p. 21. Defendants' analysis arbitrarily separates the end-of-measure drag from the 2 and 4 part of the Zimba Ku snare drum element, because only by doing so, are defendants able to claim that other songs have the same snare element as Zimba Ku. Payne Dec., ¶ 44. The end-of-measure drag is an essential part of Zimba Ku's snare pattern. Payne Dec., ¶ 42. As such, defendants have failed to identify *any* song with the same snare element as Zimba Ku.[9] Payne Dec., ¶ 47.

## C.     Zimba Ku's Original Bass Drum Element is Syncopated, Complex and Difficult

The bass drum pattern of Zimba Ku is a five note pattern that includes syncopated 16th note double strokes in the third quarter note group – on the "e" and "and" following 3.  Payne

---

[8] Further, Never Can Say Goodbye, It's Great To Be Here do not have sixteen consecutive 16th notes, or accents, and contain open hi-hats as conceded by defendants. Ferrara Initial Report, p. 25 (Musical Example 5); Payne Dec., ¶ 37.

[9] The drag in Zimba Ku is clear. Defendants distort grammar in Mr. Payne's rebuttal report to claim it is hard to hear. Payne Dec., ¶ 45. Defendants' concede the snare drum drag exists in Price Tag for purposes of this motion. Def. Memo, p. 8, n. 14. As discussed in Section IV below, it is the significance of the element to the infringed work, not the infringing work, that determines substantial similarity. Nimmer § 13.03[A][2] at 13–46.

<u>Dec.</u>, ¶¶ 48-51. [11] Zimba Ku consists of a syncopated bass drum note on "a" of 2, or the last 16th note of the second quarter note group. <u>Payne Dec.</u>, ¶ 51. Even more creative is the use of the two 16th notes on the bass drum. This particular pattern of 16th note bass drum doubles was not common at the time Zimba Ku was composed. <u>Payne Dec.</u>, ¶ 52. It is difficult to execute 16th notes on the bass drum in between normally accented 8th and quarter notes, and even more technically difficult to execute pairs of 16th notes, "doubles" on the bass drum apparatus, especially at a fast tempo such as 87-88 bpm. [14] Bass drum doubles were cutting edge at the time Zimba Ku was written and it was at the forefront of this innovation in 1975. [15] <u>Payne Dec.</u>, ¶ 57.

## D. Zimba Ku's Tempo Is Not Found in the Prior Works Cited

Tempo is a compositional element and decision made by a song's composer. <u>Payne Dec.</u>, ¶ 59. Zimba Ku and Price Tag have identical tempos (87-88 bpm) that are starkly different from Me and Bobby McGee (101 bpm), ABC (95 bpm), and I Will Find a Way (94 bpm). <u>Payne Dec.</u>, ¶¶ 60-61. Tempo is relevant in considering probative and substantial similarity of two different musical works. *Levine*, 735 F.Supp. 92; *Glover v. Austin*, 289 Fed.Appx. 430 (2008)(2nd Cir. 2008). In *Glover*, the Court of Appeals quoted plaintiff's expert in that case, Dr. Ferrara, as concluding that two songs had "significantly similar overall rhythmic thrust, feel and tempo" so much so that "with a reasonable degree of probability which ever song was created first, the

---

[11] Syncopated means to accent a note that is not normally accented. <u>Payne Dec.</u>, ¶¶ 48-50. Playing the bass drum on syncopated notes and building the stamina to play them for extended measures of time on the awkward bass drum apparatus was an innovation in drum composition. <u>Payne Dec.</u>, ¶ 50.

[14] Defendants cite to an instructional book from 1997 that contains an exercise featuring the same bass drum double composed at 72 bpm. <u>Def. Memo</u>, p. 10; <u>Payne Dec.</u>, ¶ 54. There is a significant difference in the difficulty of playing this double at 72 bpm, at a 20% faster (87-88) bpm, as in Zimba Ku. <u>Payne Dec.</u>, ¶ 55 Further, this exercise has no accents, drags, has a different intro and is not vamp form, see *infra*. <u>Payne Dec.</u>, ¶¶ 54-56.

[15] Defendants identified five songs with the same bass drum element (Me and Bobby McGee, ABC, I Will Find A Way, It's Great To Be Here. and Never Can Say Goodbye). <u>Payne Dec.</u>, ¶ 57. Defendants' wrongly claim that, Breakthrough, Nautilus, Do the Funky Penguin, and Funky President (People It's Bad) have the same bass drum element. <u>Payne Dec.</u>, ¶ 57. <u>Def. Memo</u>, p. 6. Defendants' experts conceded these songs have a different bass drum element than Zimba Ku. <u>Wolf Rebuttal Report</u>, at 4; <u>Initial Ferrara Report</u>, ¶¶ 100, 101, 103.

second song was created with reference to and influenced by the first." *Id*. at 432. Now retained by defendants, Dr. Ferrara claims that tempo is irrelevant. <u>Ferrara Initial Report</u>, ¶ 26.

**E.      Zimba Ku's Break Beat Intro is Not Found in Prior Works Cited**

Zimba Ku's drum beat is featured up-front, virtually isolated, to start the song ("break beat"). <u>Payne Dec.</u>, ¶ 64. The prominent featuring of the break beat is a creative decision made by the song's author, and not found in the prior works cited by defendants. <u>Payne Dec.</u>, ¶ 65. For example, the part of Me and Bobby McGee's drum composition identified by defendants does not appear until 0:49 into the song. The late entry is indicative of this drum part's lack of importance to that song, whereas it is the engine driving Zimba Ku from the start. <u>Payne Dec.</u>, ¶ 66. Similarly, the parts of ABC's and I Will Find A Way's drum compositions identified by defendants only appear after the introduction and are never featured.[16] <u>Payne Dec.</u>, ¶ 67.

**F.      Zimba Ku's Vamp Form is Not Found in the Prior Works Cited**

At the time Zimba Ku was written, drummers began to experiment with "vamps" – continuous repetitive rhythms that do not change by conscious creative choice. <u>Payne Dec.</u>, ¶ 71. See *Levine*, F.Supp.2d, 99 ("[r]epetitiveness does not make a work unoriginal."). Zimba Ku's drum composition is a vamp form featuring a continuous drum set rhythm uninterrupted by changes to maintain the same driving insistent drum set rhythm for 87 of 104 total measures, including the introduction, verses, choruses and bridge. <u>Payne Dec.</u>, ¶ 72. This is very different than the drum compositions in the songs cited by defendants which all have multiple (as many as four) drum parts for each part of the song - verse, chorus, bridge, introduction and several interludes. <u>Payne Dec.</u>, ¶ 75. Repeated time signature changes break up these songs' drum

---

[16] The part of the drum composition identified by Defendants in Never Can Say Goodbye and It's Great to Be Here only appears after the introduction. <u>Payne Dec.</u>, ¶ 68. These drum compositions of these songs do not have vamp forms; they have 3 and 4 main drum parts respectively. <u>Payne Dec.</u>, ¶ 76.

compositions, unlike Zimba Ku, which has no other drum part or time signature changes (ABC, for example, has two separate time signature changes from 4/4 to 3/4 time). Payne Dec., ¶ 77.

A key element of the vamp form is the absence of drum fills. Payne Dec., ¶ 80. Fills are 1-3 beats in a bar containing a combination of notes on different parts of the drum set that interrupt a continuous groove and create a "start and stop feel." Payne Dec., ¶ 80. Zimba Ku has no fills or changes in the first 38 consecutive measures, and few in the entire song. Payne Dec., ¶ 80. The songs cited by defendants have continuous fills that interrupt the flow of music, unlike the continuous groove in Zimba Ku.[17] Payne Dec., ¶ 81-82.

## G.      Zimba Ku's Original Drum Composition is Creative and Protectable

Defendants have failed to demonstrate that Zimba Ku's drum composition is identical to any of the prior works they cite, let alone that it was commonplace when Zimba Ku was created. It is clear that Me and Bobby McGee, ABC and I Will Find A Way were not copied in the creation of Zimba Ku and that its drum composition is significantly different from all three songs.[18] The changes necessary to be undertaken to create Zimba Ku from the prior works are highly creative decisions that easily exceed any measurement of "trivial variation" required for originality. *Alfred Bell*, 191 F.2d 99, 102-03.

Even if the individual elements of the Zimba Ku drum composition, examined in isolation, do not to rise to the level of originality, the combination of these elements, *i.e.* how

---

[17] There are numerous drum fills that occur at the end of measures in Me and Bobby McGee, in example, at :48, :55, 1:02, 1:11, 1:14, 1:16, 1:26, 1:33, 1:41, 1:47, 1:51, 1:55, 2:04, 2:15, 2:18, 2:31, 2:20, 2:58. ABC has fills at on the snare drum on the "and of 4" at :07, :37, :48, :51, :55, 1:26, 1:37, 2:17, 2:29, 2:31 and :2:44. I Will Find A Way has fills at 08, :15, :37, :44, :55, 1:12, 1:22, 1:32, 1:50, 2:00, 2:17, 2:35, and 2:43. Never Can Say Goodbye has fourteen fills as well. Payne Dec., ¶ 81.

[18] Creating Zimba Ku by simply copying these songs would require major reconstruction, including, replacing the eighth notes on the hi-hats with sixteen 16th notes (a breakthrough in modern drumming), closing all open hi-hats, adding alternate accents to 16th closed hi-hat notes to establish counter rhythm, adding an end-of-measure drag on the snare, greatly slowing down the tempo, eliminating all fills and changes, changing the introduction to feature the break beat up front and virtually isolated, removing all time signature changes, removing other main drum parts, and repeating the break beat throughout verses, choruses and bridge. Payne Dec., ¶ 86.

Goldsmith selected, coordinated and arranged the elements to create the composition of the drums in Zimba Ku, is highly creative and original. Payne Dec., ¶ 87. See *Feist*, 499 U.S. at 358; *Knitwaves*, 71 F.3d 996, 1003–04; *Levine*, 735 F.Supp. 92, 98; *BMS Entertainment*, 2005 WL 1593013, at *4. As such the Zimba Ku's drum composition is protectable.

As established in the next sections, although fact discovery has been stayed, Plaintiff can establish copying in Price Tag of the protectable drum composition and substantial similarity.

## POINT IV

## UNAUTHORIZED COPYING OF ZIMBA KU

The elements of a copyright infringement claim are (i) ownership of a valid copyright;[19] and (ii) unauthorized copying. *Feist*, 499 U.S. 340, 361. Unauthorized copying is established by showing that the portion 'actually copied' amounts to an "unlawful appropriation." *Jorgenson v. Epic/Sony Records*, 351 F.3d. 46 (2nd Cir. 2003). "Actual copying may be established by direct or indirect evidence." *Id*. Indirect evidence is established by showing that the composer of defendants' work had access to plaintiff's work and that there are similarities probative of copying." *Id*. A showing of "probative similarity requires only the fact that the infringing work copies something from the copyrighted work." *Ringgold v. Black Entertainment Television, Inc.,* 126 F.3d 70, 75 (2nd Cir.1997). Analysis of the works and expert testimony can be used to prove probative similarities. *Arnstein v. Porter*, 154 F.2d 464, 468 (2nd Cir.1946).

**A.    Zimba Ku's and Price Tag's Identical Appearance on Paper is Probative Similarity**

Plaintiffs' expert, Jim Payne[20], analyzed Zimba Ku and Price Tag, by listening to both

---

[19] Defendants do not dispute ownership of a valid copyright for purposes of this motion. Def. Memo, p. 2 n. 3.

[20] Jim Payne teaches funk drumming for Berklee College of Music. He previously taught at Drummer's Collective and Drummer's World for many years. Mr. Payne studied music at Julliard and Manhattan School of Music and one-on-one with legendary funk and jazz drummers. He has authored a number of well received funk drum books, Funk Drumming, Advanced Funk Drumming, The Complete Book of Funk Drumming, 100 Famous Funk Beats,

recordings, transcribing the drum parts and then examining the drum composition in each song. Payne Dec., ¶ 3. Mr. Payne found similarities that were more than just probative of copying. He found that the unique combination of hi-hat, snare drum and bass drum elements in Zimba Ku was **identically reproduced**, at the **identical tempo**, in Price Tag. Payne Dec., ¶ 98. Because Zimba Ku's drum composition was a creative and unique combination and because Zimba Ku and Price Tag are identical on paper, he concluded "the only reasonable explanation is that the creators of Price Tag copied the Zimba Ku drum composition." Payne Dec., ¶ 99. Defendants' own expert concedes the hi-hat, snare drum and bass drum notation in the two songs are identical. Ferrara Initial Report, ¶ 127.

## B.  Direct Evidence of Copying Zimba Ku in Price Tag

Defendants argue that direct evidence that the 1975 Zimba Ku sound recording  was sampled in the creation of Price Tag is not relevant because plaintiff does not own that recording. Def. Memo, p. 24. This claim must be rejected. Direct evidence of copying the recording, Zimba Ku, is plainly evidence that the Zimba Ku musical composition was copied.[21] *Jorgenson*, 351 F.3d. 46. The case cited by defendants, *Newton v. Diamond*, 204 F.Supp 2d 1244 (C.D.Cal 2002) bears no resemblance to defendants' description of it. In *Newton*, the recording was not relevant because the defendants in that case conceded sampling, not because the plaintiff did not own it.[22]

---

among others, and regularly writes for Modern Drummer Magazine . Since graduating from Yale and Columbia (M.B.A.) in 1968, he has devoted the last 45 years to studying, teaching, writing and performing funk drums.

[21] "Actual copying may be established by **direct or indirect evidence.**" *Jorgenson*, 351 F.3d. 46. "[P]robative similarity is but one of several vehicles to prove copying as a factual matter; to the extent that defendant admits copying or witnesses are available who actually viewed the act of copying, then proof of probative similarity may be unnecessary." Nimmer 13.01[B] at 13-13. Def. Memo, p. 3, n. 16; "Other examples could occur if the defendant's work contains plaintiff's signature or copyright notice, matters that would be exceedingly unlikely to occur therein absent copying." *Id*. at n. 38.

[22] Defendants argue that copying is disputed, although they have not submitted any evidence from the "creators" of Price Tag to dispute this issue. Def. Memo, p. 13, n. 6. Plaintiff has provided direct evidence of copying herein. The Court must accept plaintiff's version of the disputed facts as true on a motion for summary judgment, particularly, where all fact discovery has been stayed.

Plaintiff's expert, Peter Becker, analyzed the recordings of each song, and found indications that the Zimba Ku recording was "sampled" (digitally copied) in the Price Tag recording. <u>Becker Dec.</u>, ¶ 20.[23] Below, the waveforms in Zimba Ku's second measure (green) are lined up with the waveforms in Price Tag's first measure (red). <u>Becker Dec.</u>, ¶ 21. The composition of the hi-hat, snare and bass elements in Zimba Ku and Price Tag (as transcribed by Mr. Payne), is lined up with 16 vertical grid lines to reflect where each note would fall with perfect mathematical timing. <u>Becker Dec.</u>, ¶ 22.



In the second measure of Zimba Ku (the first green row is the left channel and the second green row is the right channel of Zimba Ku), the drummer consistently missed "perfect timing" on the beat by fractions of seconds (slightly after – to the right of - the mathematically perfectly

[23] Defendants characterize Becker's conclusions as speculative. <u>Movit Dec.</u>, ¶ 22.  This is not the case as Becker supports his conclusions with specific references to the waveform data, which defendants have not refuted.

gridded timing marks). <u>Becker Dec.</u>, ¶ 23. The "off the mark" timings of all bass and snare drum attacks in the second measure of Zimba Ku (the human element in Zimba Ku) was identically duplicated in the first measure of Price Tag (the first red row is the left channel and the second red row is the right channel of Price Tag). <u>Becker Dec.</u>, ¶ 24. The drum sounds in the second measure of Zimba Ku are identically 'off the mark.' <u>Becker Dec.</u>, ¶ 25. This is direct evidence of copying.[24] <u>Becker Dec.</u>, ¶ 25. The only reasonable explanation for identical late timings in recordings, made 35 years apart, is that the recording of Zimba Ku (including human error) was copied in the creation of Price Tag. <u>Becker Dec.</u>, ¶ 28.

Similarly, engineering imperfections are similar in the two songs. <u>Becker Dec.</u>, ¶ 29. In Zimba Ku, there was a tendency by the mixing engineers to lean to the right side of the stereo spectrum, such that the right channel is louder than the left. <u>Becker Tr.</u>, pp. 148:24-25; <u>Becker Dec.</u>, ¶ 29. This creates a slight but discernible variance in the volume of the left/right stereo spectrum in Zimba Ku such that right side has slightly greater volume as visible in larger waveforms on the right side the chart above. <u>Becker Tr.</u>, pp. 149:3 -149:7; 152:21-153:9; <u>Becker Dec.</u>, ¶ 29. For example, there are several visible left/right volume variances Zimba Ku in the areas following loud events such as snare drum and bass drum sounds. <u>Becker Tr.</u>, 149:17 - 149:25; 152:16-153:9 (identified as 1A, 1B, 3A and 3B in chart below). These areas in-between loud events correspond to hi-hats, shakers, movement in the room. <u>Becker Tr.</u>, 159:7-159:14.

These same left/right volume variances from the Zimba Ku recording occur in the identical spots in Price Tag, but in Price Tag, the variances are even more dramatic and are more

---

[24] For some perspective, the first measure of Zimba Ku (played seconds before the second measure, by the same human drummer, in the year 1975) does not match the second measure of Zimba Ku's timing "errors", but Price Tag, produced 35 years later, has all of the same timing errors. <u>Becker Dec.</u>, ¶ 26 (includes chart indicating variances in Zimba Ku's first two measures).

visible, as a result of compression, equalization and layering in Price Tag (identified as 2A, 2B, 4A and 4B in chart below). <u>Becker Tr.</u>, 151:5-152:3; <u>Becker Dec.</u>, ¶ 31.

Further, although the right side of Zimba Ku is generally mixed louder than the left, there is one point in the second measure of Zimba Ku where the volume imbalance *reverses*, and the left side is louder than the right (identified as 5A and 5B in chart below). <u>Becker Tr.</u>, 172:2-172:15, 181:6-182:2; <u>Becker Dec.</u>, ¶ 32. This volume imbalance *reverse* occurs in the same spot in Price Tag (identified as 6A and 6B in chart below). <u>Becker Tr.</u>, 172:7-172:11, 182:3-182:24; <u>Becker Dec.</u>, ¶ 33. The nature of the identical performance and mixing errors in Zimba Ku and Price Tag, such as the identical way the drum beats fall of the grid, and the matching volume variances, are direct evidence of copying.[25]  <u>Becker Tr.</u>, 170:20 – 171:7; <u>Becker Dec.</u>, ¶ 34.



---

[25] "[C]ourts have regarded the existence of common errors in two similar works as the strongest evidence of copying as a factual matter" and as "creating a prima facie case of copying" and "constitute[ing] similarity sufficiently striking so as to void the requirement of proving access." Nimmer, 13.03[C] at 13-88.11, 13-89; See *Eckes v. Card Prices Update*, 736 F.2d859 (2nd Cir. 1984)(reversing district court's finding of no copying based on errors common to both works); *College Entrance Book Co. v. Amsco Book Co.*, 119 F.2d 874 (2nd Cir. 1941); *Sub-contractors Register, Inc. v. McGovern's Contractors & Builders Manual, Inc.*, 69 F.Supp. 507, 510 (S.D.N.Y. 1946)("Reproduction of errors is [the] most significant evidence of piracy" and justifies the conclusion of copying).

**C.      Zimba Ku and Price Tag Play Perfectly At the Same Time**

Defendants' audio expert, Paul Geluso, does not dispute that Zimba Ku's second measure

and Price Tag sound the same[26] and concedes that variances in the "off the mark" timings are, at

most, only capable of being measured as single digit *milliseconds*.[27] Geluso Report, ¶ 27. Audio

Exhibit 4 is a recording of Zimba Ku's second measure looped in the left channel, and Price Tag

in the right channel. Becker Dec., ¶ 36. The recordings match to the degree that one cannot tell

that Zimba Ku and Price Tag are playing at the same time. Becker Dec., ¶ 36. Just listening to

Audio Exhibit 4, it apparent that Zimba Ku and Price Tag are identical. Becker Dec., ¶ 36.

Based on his analysis, Mr. Becker concluded that Zimba Ku was sampled in the creation

of Price Tag. Becker, Dec., ¶ 93. His conclusion is amply supported by common timing and

mixing errors, as well as their perfect simultaneous play. Becker Dec., ¶¶ 13-36. Mr. Becker

would be able to identify the "smoking gun," the original Zimba Ku sound recording copied in

the master file for Price Tag, if given the opportunity to analyze it in fact discovery. Becker Dec.,

94. Defendants appear desperate to avoid this outcome.[28]

---

[26] Mr. Geluso does not dispute the recordings sound the same, but claims that playing two recordings at the same "can obscure" differences. Geluso Initial Report, ¶ 19. This argument defies common sense. Becker Dec., ¶ 19. The perfect simultaneous play of the loop of Zimba Ku's second measure and Price Tag confirms copying. Becker Dec., ¶ 36.

[27] This is an insignificant difference because common production techniques including, layering, compression, and nudging, account for these tiny variations. Becker Dec., ¶¶ 37-63. For a demonstration of Dr. Luke layering drums, see Video Exhibit 1 at 53:20 – 56:00, and at 19:20. In addition, the presence of vocals in the waveform and an errant lineup used by Mr. Geluso account for tiny millisecond variations. Becker Dec., ¶¶ 64-85.

[28] Defendants falsely claim that direct evidence of copying the Price Tag recording in Zimba Ku is not relevant and that Plaintiff's counsel failed to contest unidentified "numerous statements to the Court by Defendants' counsel that no such sample is present in 'Price Tag'." Def. Memo, p. 24. This is not the case. While Plaintiff makes no claim for infringement of the recording, because it does not own the recording, sampling is absolutely relevant to the question of infringement of the composition. *Grand Upright Music Ltd. v. Warner Bros. Records, Inc.*, 780, F. Supp.182 (1991). Plaintiff has not waived its right to seek discovery on this issue upon lifting the stay of fact discovery.

## POINT V

## PRICE TAG BEARS SUBSTANTIAL SIMILARITY
## TO PROTECTED EXPRESSION IN ZIMBA KU

**A.      Fragmented Literal Similarity is the Proper Analysis**

Unlawful appropriation is established "by showing that the second work bears substantial similarity to protected expression in the earlier work." *Williams v. Broadus*, 2001 WL 984714, at *3 (S.D.N.Y. 2001). In cases of digital sampling, or literal note-for-note copying, such as this one, the proper analysis in the Second Circuit is "fragmented literal similarity." *Id*. See *Ringgold v. Black Entertainment Television, Inc*., 126 F.3d 70, 75 n.3 (2nd Cir. 1997)("The "exact copying of a portion of a work" is known as "fragmented literal similarity.) " See *Tufamerica v. Diamond*, 968 F.Supp.2d 588 (S.D.N.Y. 2013); *Newton v. Diamond,* 388 F.3d 1189, 1194 (9th Cir. 2003)(citing 4 Nimmer § 130.03[A][2], at 13–45, "[t]he similarity, although literal, is not comprehensive.)" See *Williams*, 2001 WL 984714, at *3 (applying fragmented literal similarity analysis because "[t]he ten notes, if not actually copied directly from a pre-existing recording . . . were at a minimum replayed exactly as they appear in that pre-existing work.")

The dispositive question in a "fragmented literal similarity" analysis is "whether the copying goes to trivial or substantial elements" of the original work." *Tufamerica*, 968 F.Supp.2d 598. "Substantiality is measured by considering the qualitative and quantitative significance of the copied portion in relation to the plaintiff's work as a whole."[29] *Newton,* 388 F.3d at 1195, *Jarvis v. A & M Records,* 827 F.Supp. 282, 289 (D.N.J.1993). The copying of even a "relatively small" quantitative amount of the pre-existing work may be substantial if it is of great qualitative importance to the pre-existing work as a whole.'" *Williams,* 2001 WL 984714, at *3; *Elsmere*

---

[29] It is irrelevant "whether such material constitutes a substantial portion of [the allegedly infringing] work." Nimmer § 13.03[A][2] at 13–46.

*Music, Inc. v. National Broadcasting Co., Inc.,* 482 F.Supp. 741, 744 (S.D.N.Y.), *aff'd.* 623 F.2d

252 (2nd Cir.1980) (finding that copying was not *de minimis* where the copied two words and

four-note musical phrase went to "the heart" of the original composition).

    Here, there can be no doubt that the drum composition is both a qualitatively and

quantitatively substantial part of Zimba Ku. Qualitatively, the defining musical element of Zimba

Ku is its break beat. <u>Payne Dec.</u>, ¶ 89. It is featured up-front, virtually isolated, to begin the song

and is featured throughout. <u>Payne Dec.</u>, ¶ 90. It is the heart of Zimba Ku. <u>Payne Dec.</u>, ¶ 91. The

break beat in Zimba Ku is instantly recognizable, well-known and was featured on <u>Right On!</u>

<u>Break Beats and Grooves From the Atlantic and Warner Vaults, 1967-1975</u>. <u>Am. Cmplt.</u>, Exh. 2.

The compilation's reviews single out Zimba Ku as a highlight on the album. <u>Am. Cmplt</u>, Exh. 2.

It defies common sense that Warner, a major record label, would select Zimba Ku for inclusion

on an album of great break beats and grooves if it was "trite" or "common" as defendants

maintain. <u>Def. Memo</u>, p. 23. Zimba Ku's drums are obviously remarkable and qualitatively, a

substantial, important part of the song.

    Quantitatively, the break beat comprises 83% (87 of 104 measures) of Zimba Ku. <u>Payne</u>

<u>Dec.</u>, ¶93. Zimba Ku begins with its break beat and it is continuously present throughout the

song, including all verses and choruses and bridge, establishing an uninterrupted groove. <u>Payne</u>

<u>Dec.</u>, ¶94. Price Tag copies 72 measures at the identical tempo. <u>Payne Dec.</u>, ¶ 95.

    Defendants argue the "total concept and feel" of the works are different.  This, of course,

makes little sense in the context of a music plagiarism case where, a portion of the original work

has been lifted verbatim and  incorporated as part of a completely different work. See *Bridgeport*

*Music, Inc. v. UMG Recordings, Inc.*, 585 F.3d. 267(6[6th] Cir. 2009) (where defendants literally

copied the rhythmic musical element "the overall concept or tone of the work was not relevant

to the jury's task"). "If it really were true that for infringement to follow a listener must have to confuse one work for another, a work could be immune from infringement so long as the infringing work reaches a substantially different audience than the infringed work. In such a situation, a rap song, for instance, could never be held to have infringed an easy listening song or a pop song." *Jarvis,* 827 F.Supp. at 290. Such a "looking at the work as a whole" test, "applied in cases of fragmented literal similarity, would eviscerate the qualitative/quantitative analysis." *Id.* "The proper question to ask is whether the defendant appropriated, either quantitatively or qualitatively, 'constituent elements of the work that are original.'" *Id.* at 291, quoting *Feist*, 499 U.S. 340.

In a last ditch effort, defendants argue that substantial similarity cannot exist because background elements in Zimba Ku, such as cowbell and shaker, are not copied in Price Tag. Def. Memo, pp. 22-24. Putting aside that substantial similarity is a question of fact, it is "entirely immaterial that, in many respects, plaintiff's and defendants' works are dissimilar, if in other respects, similarity as to a substantial element of plaintiff's work can be shown." 4 Nimmer § 13.03(B), at 13–52 to 53. The main, dominant, forceful drum set rhythm is the engine of the entire musical work, Zimba Ku. Payne Dec., ¶ 95. The three "main differences" identified by defendants are cowbell, conga or shaker. Ferrara Report., ¶ 128. These background elements and are almost entirely overlapped by Zimba Ku's hi hat, snare and bass drum elements. Payne Dec., ¶ 96.[30] If the cowbell, shaker and conga were removed, the heart of Zimba Ku would remain intact. Payne Dec., ¶ 97. If the hi-hat, bass and snare elements were removed, on the other hand, Zimba Ku would sound entirely different. Payne Dec., ¶ 97. "It is enough that substantial parts were lifted; no plagiarist can excuse the wrong by showing how much of his work he did not pirate." *Sheldon v. Metro-Goldwyn Pictures Corporation*, 81 F.2d. 49 (2nd Cir. 1936)(L. Hand).

---

[30] For example, there is no material difference between Zimba Ku's first measure, which has no cowbell, Zimba Ku's second measure, which has one cowbell note. Payne Dec., ¶ 96. The two shaker notes are overlapped by hi-hat notes and a bass drum note and 7 of 9 conga notes are overlapped by snare and bass drum notes. Payne Dec., ¶ 96.

**B.     The Cases Cited by Defendants Are Inapplicable**

The cases cited by defendants are irrelevant to these facts: *Jean v. Bug*, 2002 WL 287786 (S.D.N.Y. 2002)(identical three note sequence used in "thousands of songs" and phrase 'clap your hands' was unprotectable), *Velez v. Sony Discos*, 2007 WL 120686 (S.D.N.Y. 2007)(use of consecutive 8 measure phrases as a structural device as had been done in 60 songs over a period of 50 years was unprotectable), *Currin v. Arista Records, Inc.*, 724 F.Supp.2d 286 (D.Conn. 2010)(the word "frontin'" was unprotectable). In the other cases cited, substantial similarity was not found or the element was likewise found to be unprotectable on the specific facts of the case.

**C.     Disagreement Between Opposing Experts Makes Summary Judgment Inappropriate**

It is black letter law that the "question of whether particular elements of a work demonstrate sufficient originality and creativity to warrant copyright protection [is] a question for the factfinder." *Matthew Bender & Co., Inc. v. West Pub. Co.,* 158 F.3d 674, 681 (2nd Cir. 1998); *Tin Pan Apple, Inc. v Miller Brewing Co., Inc.,* 1994 WL 62360, at *4 (S.D.N.Y. 1994)(plaintiffs "entitled to test their claims of originality at trial."). The case law is clear that it is inappropriate for this Court to decide the issue of summary judgment in defendants' favor where the experts disagree on whether Zimba Ku's drum composition is original. See *Ulloa v. Universal Music & Distribution, Corp.,* 303 F.Supp.2d 409, 413 (S.D.N.Y. 2004)*,* ("It would be improper for this Court, on a motion for summary judgment, to draw its own conclusions from this competing evidence regarding the originality of the Vocal Phrase."); *Lessem,* 766 F.Supp.2d 504, 512 (disagreements between the sides' experts concerning originality "illustrate the inappropriateness of summary judgment of these issues"). *Levine,* 735 F.Supp.2d 92 (experts' dispute as to originality is not one the Court can resolve on a motion for summary judgment). In the event this Court finds that any of the songs relied on by defendants create some question as to whether

Zimba Ku's drum composition is protectable, defendants motion should be denied as such a finding would create a genuine issue of material fact. See, *Vargas*, 418 F. Supp 2d 369.

## Conclusion

For the reasons herein and in the accompanying papers, we respectfully request that the Court deny defendants' motion for summary judgment should be denied.

Dated: New York, New York
October 31, 2014

SCHWARTZ & PONTERIO, PLLC
Attorneys for Plaintiff

*/s Brian S. Levenson*

By: _____

Brian S. Levenson
Matthew F. Schwartz
134 West 29th Street - Suite 1006
New York, New York 10001
Telephone: (212) 714-1200