UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

:

NEW OLD MUSIC GROUP, INC.,                                 :

:

Plaintiff,       :

:                No. 13-CV-9013 (RA)

-v-                                            :

:                OPINION & ORDER

LUKASZ GOTTWALD *p/k/a Dr. Luke*                           :

*individually and doing business as* KASZ                  :

MONEY PUBLISHING, et al.,                                   :

:

Defendants.      :

:

------------------------------------------------------------X

RONNIE ABRAMS, United States District Judge:

This case concerns Plaintiff New Old Music Group, Inc.'s allegation that the drum part of

the popular song "Price Tag," recorded by the artist known as Jessie J, was copied from "Zimba

Ku," a song recorded by the band Black Heat in 1975.  Plaintiff brings this copyright

infringement action against Defendants Lukasz Gottwald, p/k/a Dr. Luke, individually and doing

business as Kasz Money Publishing ("Gottwald"); Prescription Songs LLC; Kasz Money, Inc.;

Kobalt Music Publishing America Inc.; Jessica Cornish, p/k/a Jessie J ("Cornish"); Sony/ATV

Tunes, LLC; Sony/ATV Music Publishing (UK) Limited; UMG Recordings, Inc.; Lava Music,

LLC; and Republic Records (collectively "Defendants").  Before the Court is Defendants'

motion for summary judgment, which is based exclusively on expert analysis of the two musical

compositions at issue.  For the reasons that follow, Defendants' motion is denied.

## BACKGROUND

### I.  General Background

In 1975, Lenny Lee Goldsmith, the President of New Old Music Group, Inc., wrote the musical composition "Zimba Ku," a song recorded by the band Black Heat.    Plaintiff's Additional Statement of Relevant Facts ("Pl.'s Add'l Stmt.") ¶ 95; Goldsmith Decl. ¶¶ 2, 4; Defendants' Rule 56.1 Statement ("Defs.' 56.1 Stmt.") ¶ 2.  It is undisputed for purposes of this motion that Goldsmith "did not copy, refer or otherwise listen to any other song when [he] wrote Zimba Ku."  Pl.'s Add'l Stmt. ¶ 96; Goldsmith Decl. ¶ 5; Defs.' Resp. to Pl.s' Add'l Stmt. at 2. It is also undisputed for purposes of this motion that Plaintiff New Old Music Group, Inc. is the owner of the copyright in the musical composition of Zimba Ku.  Defs.' 56.1 Stmt. ¶ 1.  Plaintiff does not, however, own the copyright in the sound recording of Zimba Ku.  *Id.* at ¶ 3.[1]

The song "Price Tag" was released in 2011.  Defs.' 56.1 Stmt. ¶ 5.  Defendant Cornish is the featured vocal recording artist on the sound recording.  *Id.* at ¶ 4.  Each of the Defendants named in this action is a co-writer of, or otherwise exploited, Price Tag.  *Id.* at ¶ 6.  Plaintiff alleges that Defendants "copied and reproduced copyrightable elements of Zimba Ku in Price Tag, specifically, the drum composition of Zimba Ku, without authorization . . . ."  Am. Compl. ¶ 50.

The drum part in question, Plaintiff claims, is "one of the most famous 'breakbeats' in funk, R&B, and hip hop music history."  Am. Compl. ¶ 26.  A "breakbeat" has been variously defined as "the most percussive portions of a record," Stephen R. Wilson, *Music Sampling Lawsuits: Does Looping Music Samples Defeat the De Minimis Defense?*, 1 J. High Tech. L.

---

[1] "A musical composition consists of rhythm, harmony, and melody, and . . . protects the generic sound that would necessarily result from any performance of the piece.  The sound recording, on the other hand, is the aggregation of sounds captured in the recording."  *TufAmerica, Inc. v. Diamond*, 968 F. Supp. 2d 588, 602 (S.D.N.Y. 2013) (citations omitted).

179, 182 (2002); "those portions of a record containing a primarily percussive instrumental segment," David M. Morrison, *Bridgeport Redux: Digital Sampling and Audience Recoding*, 19 Fordham Intell. Prop. Media & Ent. L.J. 75, 91 (2008); and "a rhythm that is broken, syncopated, or abstract[,] used in funk, jazz, hip-hop drum 'n' bass, etc." *Breakbeat*, Urban Dictionary, http://www.urbandictionary.com/define.php?term=breakbeat (last visited August 6, 2015). Plaintiff alleges that the Zimba Ku breakbeat is "the driving force of the composition and is featured continuously throughout the work . . . ." Am. Compl. ¶ 27.

Plaintiff's infringement claim is based solely on the drum set part of Zimba Ku, and not on the parts played by any other instruments. Defs.' 56.1 Stmt. ¶ 12. It is undisputed that there are no other harmonic, melodic or lyrical similarities of any significance between Zimba Ku and Price Tag. Defs.' 56.1 Stmt. ¶ 11.

All of the rhythmic similarities between Zimba Ku's drum part and Price Tag's drum part are contained in a single measure of Zimba Ku and a single measure of Price Tag, which are repeated continually throughout each of the songs. *Id.* at ¶ 14. There is no dispute that the rhythmic similarities at issue are all contained in the bass drum, snare drum, and hi-hat parts of the respective songs. As characterized by Defendants, the alleged similarities of the drum parts are as follows: (a) sixteen consecutive 16th notes on the hi-hat cymbal; (b) a bass drum pattern consisting of two eighth notes on the first beat of the measure, followed by three syncopated notes on beats 2 and 3; (c) snare drum attacks on beats 2 and 3; and (d) a "ghost note" or "drag" on the snare drum at the end of the measure. Defs.' 56.1 Stmt. ¶ 15.[2]  Plaintiff adds that the hi-hat pattern consists of alternately accented 16th notes on a closed, rather than open, hi-hat; the

---

[2] A "ghost note," according to Plaintiff's expert, is a "very soft note[] on the snare drum that fall[s] between the main accents to help establish the underlying 16th note feel . . . ." Payne Decl. Ex. 2 at 5. A "drag" occurs where "there are an indeterminate number of notes actually played as the stick is dragged or buzzed over the snare drum head." *Id.* at 6.

3

tempos of the songs are the same, at 87-88 beats per minute; the drum parts are featured in virtual isolation in the introductions of the songs; and the drum parts are repeated without fills or changes for extended periods. Payne Decl. ¶¶ 14-15.

## II. Procedural History

Plaintiff alleges that it sent written notice of the alleged infringement to certain Defendants on March 15, 2012. Am. Compl. ¶ 53, Ex. 4. Despite this notice, Plaintiff contends, Defendants continued to infringe Plaintiff's copyright. Am. Compl. ¶ 55. On December 19, 2013, Plaintiff filed the Complaint in this matter. *See* ECF No. 1. An Amended Complaint was filed on January 29, 2014. *See* ECF No. 7.

At the request of Defendants, on May 14, 2014, this Court ordered that full fact discovery be stayed in favor of an initial period of expert discovery and decision on the instant motion. *See* ECF No. 35. The motion—and Plaintiff's opposition—is based solely on the evidence adduced during this initial phase of expert discovery.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 332 (1986). The burden of showing that no genuine issue of material fact exists rests on the moving party. *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57 (2d Cir.1987). The court must "draw all factual inferences in favor of the party against whom summary judgment is sought," *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir. 1989) and "construe the evidence in the light most favorable to

4

the nonmoving party." *United States v. All Funds Distributed to Weiss*, 345 F.3d 49, 53 (2d Cir. 2003). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991).

## II.    Copyright Infringement

To establish a copyright infringement claim, a plaintiff must show: (A) ownership of a valid copyright; and (B) unauthorized copying of the copyrighted work. *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 51 (2d Cir. 2003).

### A. Ownership of a Valid Copyright

Defendants do not dispute for purposes of this motion that Plaintiff owns a valid copyright over the musical composition for Zimba Ku. Defs.' 56.1 Stmt. ¶ 1; Reply Br. at 2 ("Defendants are not seeking adjudication of the first prong of this test . . . ."). Therefore, only the second element—unauthorized copying of the copyrighted work—is in dispute.

### B. Unauthorized Copying

To satisfy the "unauthorized copying" element of a copyright infringement claim, a plaintiff must show both that (1) his work was "actually copied" and (2) that the portion copied amounts to an "improper or unlawful appropriation," *Jorgensen*, 351 F.3d at 51 (citation omitted), because "a substantial similarity exists between the defendant's work and the protectable elements of plaintiff's." *Hamil Am. Inc. v. GFI*, 193 F.3d 92, 99 (2d Cir. 1999) (citation omitted).

#### 1. Actual Copying

"The first inquiry in the unauthorized copying analysis poses the purely factual question of whether the defendant 'actually copied' plaintiff's work, and can be proved by direct or indirect evidence." *Velez v. Sony Discos*, No. 05-CV-0615 (PKC), 2007 WL 120686, at *6

5

(S.D.N.Y. Jan. 16, 2007) (quoting *Jorgensen*, 351 F.3d at 51). In the absence of direct evidence of actual copying, copying may be inferred where a plaintiff demonstrates that "the person who composed the defendant's work had access to the copyrighted material and that there are similarities between the two works that are probative of copying." *Jorgensen*, 351 F.3d at 51 (citations omitted). "Similarities between works are 'probative of copying' if the 'similarities between the two works . . . would not be expected to arise if the works had been created independently.'" *Velez*, 2007 WL 120686, at *6 (quoting *Odegard, Inc. v. Costikyan Classic Carpets, Inc.*, 963 F. Supp. 1328, 1337 (S.D.N.Y. 1997)); *see also* 4 Nimmer on Copyright § 13.01 ("[W]hen the question is copying as a factual matter, then similarities that, in the normal course of events, would not be expected to arise independently in the two works are probative of defendant's having copied as a factual matter from plaintiff's work. Otherwise stated, such similarities negate defendant's claim of independent creation."). There is an inverse relationship between access and probative similarity such that the "greater the proof of access, the less striking the similarities must be in order for actual copying to be inferred." *Velez*, 2007 WL 120686, at *6 (citing *Jorgensen*, 351 F.3d at 56).

"Evidence admissible on the issue of 'probative similarity' includes expert testimony 'dissecting' the two works and discussing the works' relationship to other earlier works, for the purpose of illuminating whether similarities between the two works are more likely due to copying or independent creation." *McDonald v. Multimedia Entm't, Inc.*, No. 90-CV-6356 (KC), 1991 WL 311921, at *2 (S.D.N.Y. July 19, 1991). If the potentially similar elements of the two works are "so commonplace that [they are] not unlikely to arise [in] independently created works," the elements will not be probative of actual copying. *Velez*, 2007 WL 120686, at *10.

6

### a. Probative Similarities in the Zimba Ku and Price Tag Compositions

As an initial matter, it is undisputed that, as transcribed to musical notation, the drum parts in question are virtually identical. *See* Ferrara Decl. Ex. 1 ("Ferrara Initial Report") at 15; Payne Decl. ¶¶ 16-17.[3] Defendants' primary contention on summary judgment is that, regardless of these similarities, the drum part in Zimba Ku—both its individual elements and those elements in combination—is so common that use of similar elements or a combination of such elements in Price Tag cannot be probative of copying. The Court disagrees. While many of the individual elements of Zimba Ku may be commonplace, Defendants have not shown that, as a matter of law, the combination of those elements in the drum part is so common as to preclude any reasonable inference of copying.[4]

Breaking down Zimba Ku's drum part into (1) sixteen consecutive 16th notes on the hi-hat cymbal; (2) a bass drum pattern consisting of two 8th notes on the first beat of the measure, followed by three syncopated notes on beats 2 and 3; (3) snare drum attacks on beats 2 and 4; and (4) a "buzz" on the snare drum at the end of the measure, Defendants contend that each of these elements are so "trite" and "unremarkable" that they are not unlikely to arise in independently created works. Defs.' Br. at 1, 12. To this end, Defendants' experts cite numerous songs containing these elements before either Price Tag or Zimba Ku were composed.

---

[3] Although Defendants' expert's transcription does not include a "drag" or "ghost note," in Price Tag, Defendants assume for purposes of this motion that this element exists in both Zimba Ku and Price Tag. Defs.' Br. at 4 n.10.

[4] Defendants also contend that probative similarity does not exist because "[t]here are substantial rhythmic differences between Zimba Ku and Price Tag." Defs.' Br. at 10. These differences include fourteen measures of Zimba Ku that are not contained in Price Tag and the presence in Zimba Ku, but not in Price Tag, of a shaker, tambourine, conga drums, cowbell, and handclaps. *Id.* None of these elements are at issue, however, and, as Judge Hand wrote, "no plagiarist can excuse the wrong by showing how much of his work he did not pirate." *Sheldon v. Metro-Goldwyn Pictures Corp.*, 81 F.2d 49, 56 (2d Cir. 1936). This is not to say that such differences are irrelevant. As a leading treatise on copyright notes, "[i]f the points of dissimilarity not only exceed the points of similarity, but indicate that the remaining points of similarity are, within the context of plaintiff's work, of minimal importance . . . then no infringement results." 4 Nimmer on Copyright § 13.03. On the present motion, however, the Court cannot conclude that these differences, alone or in conjunction with Defendant's other evidence, would necessarily preclude an inference of infringement.

7

*See, e.g.*, Wolf Decl. Ex. 1 ("Wolf Initial Report") at 4, 7-8, and Ferrara Initial Report" ¶¶ 61, 63
(citing "I'm Gonna Love You Just a Little Bit More Baby" (hi-hat rhythm); "ABC" (bass drum
rhythm); "Me and Bobby McGee" (snare drum rhythm); and "Nautilus" ("buzz" or "ghost
note")).[5] Viewed in terms of these isolated elements, and in light of the copious examples of
prior art containing these elements, it may well be that no reasonable juror could find that
similarities consisting solely of these elements would be probative of copying. *See, e.g.*, *Gaste v.
Kaiserman*, 863 F.2d 1061, 1068-69 (2d Cir. 1988) (probative similarity "between pieces of
popular music must extend beyond themes that could have been derived from a common source
or themes that are so trite as to be likely to appear in many compositions"); *Velez*, 2007 WL
120686, at *10 (two songs similar only in that they both use 4/4 time, or employ a "structural
idea" of two eight-measure phrases is "not, without more, a probative similarity because [those
elements are] so commonplace that it is not unlikely to arise [in] independently created works");
*McDonald*, 1991 WL 311921, at *4 (three-note sequence that is "a common and much-used tone
in traditional western music" cannot raise an inference of copying).

Even assuming that none of these individual elements would be probative of copying,
however, the same cannot be said of the elements in combination. Plaintiff, after all, is not
alleging copying of these individual elements in isolation—it is alleging the wholesale copying
of the relevant Zimba Ku drum part, *i.e.*, these elements in combination. *See Adams v. Warner
Bros. Pictures Network*, No. 05-CV-5211 (SLT), 2007 WL 1959022, at *3 (E.D.N.Y. June 29,
2007) ("In the context of deciding whether the defendant copied at all . . . similarity relates to the

---

[5] Plaintiff initially contended that because Defendants' expert reports are unsworn, they are inadmissible
and cannot be considered on a summary judgment motion. Opp. at 3. This issue has been mooted, however,
because Defendants have since filed declarations from their experts verifying their reports under penalty of perjury.
*See* ECF Nos. 71-73; *Cornell Research Found., Inc. v. Hewlett-Packard Co.*, No. 5:01-CV-1974 (NAM) (DEP),
2007 WL 4349135, at *19 (N.D.N.Y. Jan. 31, 2007) (defect "curable through the submission of an affidavit or a
declaration verifying the report's contents"); *Glowczenski v. Taser Int'l, Inc.*, 928 F. Supp. 2d 564, 570 (E.D.N.Y.
2013) (considering unsworn expert reports after the plaintiffs submitted declarations from the experts). The Court
will therefore consider Defendants' expert reports on this motion.

entire work . . . ."), *aff'd sub nom. Adams v. Warner Bros. Pictures*, 289 F. App'x 456 (2d Cir. 2008); *see also Swirsky v. Carey*, 376 F.3d 841, 848 (9th Cir. 2004) ("To pull these elements out of a song individually, without also looking at them in combination, is to perform an incomplete and distorted musicological analysis.").

In this regard, Defendants point to three works of prior art that purportedly contain all of these elements in combination and thus are proof that, even taken as a whole, the Zimba Ku drum part is so commonplace that no inference of copying based on similarities in the drum part can reasonably be made.[6]  As Plaintiff argues, however, none of these three songs combine the elements in the same way that Zimba Ku—and Price Tag—do.  The Court therefore cannot conclude as a matter of law that the Zimba Ku drum part is so common and prevalent in the prior art provided by Defendants that copying cannot be inferred.

The first song Defendants contend incorporates all of the Zimba Ku elements in the same way is "Me and Bobby McGee," recorded by Thelma Houston in 1973. Defs.' Br. at 18; Ferrara Initial Report ¶¶ 61-62. Defendants assert that "Me and Bobby McGee" "includes measures containing the combination of sixteen consecutive 16th notes on the hi-hat, the identical bass drum pattern as 'Zimba Ku' and 'Price Tag,' and snare drum attacks on beats 2 and 4." Defs.' Br. at 18. In Zimba Ku, however, the continuous 16th notes on the hi-hat are played on a *closed* hi-hat; the 16th notes in "Me and Bobby McGee," by contrast, include two *open* hi-hat attacks at the end of the measure. Opp. at 10. According to Plaintiff's expert, Jim Payne, "[o]pen hi-hats are compositionally different than closed hi-hat notes and produce different, more legato sounds

---

[6] One of Defendants' experts, Steven Wolf, lists three other songs that purportedly share all of the Zimba Ku and Price Tag elements in combination.  Wolf Initial Report at 9.  Defendants have not cited these songs in their briefing, however, as songs sharing all of the same elements, and a review of Dr. Ferrara's—another of Defendants' experts—transcriptions of these songs show that they are not notated in the same way as Zimba Ku and Price Tag. *See* Ferrara Initial Report at 25 (transcriptions of "It's Great to Be Here," "Never Can Say Goodbye," and "Long Red.")

and rhythms" that "sharply contrasts with the continuous groove in Zimba Ku and Price Tag." *Id.* Indeed, Defendants' expert, Dr. Ferrara, acknowledges as much in his transcription of "Me and Bobby McGee," wherein he notates the open hi-hats differently than the closed hi-hats. Ferrara Initial Report at 21. Defendants argue that this distinction is irrelevant because "a composition does not change based upon the instrument which performs it." Reply Br. at 11. Defendants provide no legal support for this contention, and both courts and commentators appear to disagree. *See, e.g.*, *Swirsky*, 376 F.3d at 849 (elements of a musical composition can include "*timbre, tone*, spatial organization, consonance, dissonance, accents, note choice, combinations, *interplay of instruments*, basslines, and new technological sounds" (citing Debra Presti Brent, *The Successful Musical Copyright Infringement Suit: The Impossible Dream*, 7 U. Miami Ent. & Sports L. Rev. 229, 248-49 (1990)) (emphasis added). In any event, the fact that Dr. Ferrara himself notated open and closed hi-hats differently belies the assertion that such differences are not compositional components. Compositionally, then, "Me and Bobby McGee" does not contain the same elements as Zimba Ku or Price Tag.[7]

Defendants next contend that "ABC" and "I Will Find a Way," recorded by The Jackson 5 and released in 1970 and 1971, respectively, contain all the same elements as Zimba Ku and Price Tag. Defs.' Br. at 18; Ferrara Initial Report ¶¶ 63-68. Dr. Ferrara, however, admits that the hi-hat rhythm in "ABC" and "I Will Find a Way" consists of continuous 8th notes rather than

---

[7] Defendants' attempt to characterize Payne's deposition testimony as an "admission" that instrumentation does not matter is unavailing. While Payne did state that he would consider "Mary Had a Little Lamb" to be the same composition whether played on a clarinet or a trumpet, Payne Dep., 52:22-53:12, this generic and unremarkable statement has no bearing on whether "timbre, tone, spatial organization, consonance, dissonance, accents, note choice, combinations, interplay of instruments, basslines, and new technological sounds," *Swirsky*, 376 F.3d at 849, should be considered compositional elements when the particular musical composition in question specifies those elements. This is not to say that every element of a musical composition is itself protectable by copyright, but there is no reason why such elements cannot be considered in determining whether, as a factual matter, copying may have taken place. *See Eve of Milady v. Moonlight Design Inc.*, No. 98-CV-1549 (LAP), 1998 WL 849074, at *4 (S.D.N.Y. Aug. 11, 1998) (in determining probative similarity, "a court must examine the entire work, not just the protectable elements" (citation omitted)); 4 Nimmer on Copyright § 13.01 (probative similarities "may inhere in constituents that are themselves original or in unoriginal ingredients").

16th notes. Ferrara Initial Report ¶¶ 64, 68. Defendants nevertheless argue that because "ABC" and "I Will Find a Way" feature continuous 16th notes played on a tambourine, they are compositionally the same as Zimba Ku and Price Tag. Defs.' Br. at 21; Reply Br. at 11. As with the previous argument, Defendants provide no legal support for the proposition that instrumentation is not a compositional component to a musical work—a proposition that is contradicted by other authority. *See Swirsky*, 376 F.3d at 849. Taken to its logical extreme, Defendants' argument would necessitate the conclusion that any song featuring continuous 16th notes played by any instrument would contain the same compositional element as Zimba Ku and Price Tag. This defies logic, suggesting that, as a general proposition, a composer writes music without considering any qualities of the musical work other than note duration.   Yet even considering only note duration, a 16th note on a tambourine is "more legato (longer duration) than closed hi-hats," and "jingles . . . through the next attack, while the closed hi-hat[] attacks are staccato (short distinct separate sounds)." Opp. at 9 (citing Payne Depo. at 53:21-23).  In other words, the rhythms created by a tambourine and a closed hi-hat would be different, and as even Defendants concede, rhythm is a component of musical composition. *See* Defs.' Br. at 1 n.1 ("A musical composition consists of rhythm, harmony, and melody . . . ." (quoting *Newton v. Diamond*, 204 F. Supp. 2d 1244, 1249 (C.D. Cal. 2002), *aff'd*, 349 F.3d 591 (9th Cir. 2003), *opinion amended and superseded on denial of reh'g*, 388 F.3d 1189 (9th Cir. 2004) and *aff'd*, 388 F.3d 1189 (9th Cir. 2004))).  "ABC" and "I Will Find a Way" do not include all of the elements of Zimba Ku and Price Tag.

Plaintiff further contends that none of these three compositions contain a "drag" or "ghost note" on the snare drum, and thus do not establish as a matter of law that the Zimba Ku drum part is so commonplace as to prevent an inference of actual copying.  Indeed, review of Dr.

Ferrara's transcription of the compositions' drum parts reveals that no such "drag" or "ghost note" exists. *See* Ferrara Initial Report at 21. Nor, according to Plaintiff, do they contain alternately accented hi-hats, which Zimba Ku and Price Tag do. Opp. at 10-11. Plaintiff's expert states that "[a]n accent is a *compositional* element that determines the variation in volume of any note in a song and are notated with a sideways V above the note in a composition." Payne Decl. ¶ 34. Defendants again respond, with no legal support, that accents are an element of performance rather than composition. Defs.' Br. at 22. At least one court has come to the contrary conclusion, *see Hirsch v. Paramount Pictures*, 17 F. Supp. 816, 818 (S.D. Cal. 1937) ("In the case of a musical composition, the similarity may arise out of a grouping of notes, similarity of bars, *accent*, harmony, or melody.") (emphasis added), consistent with common experience—anyone who has ever played music knows that accent notations are an integral part of the musical composition.[8]

Plaintiff also argues that the fact that Zimba Ku and Price Tag are played at the exact same tempo (save for an acceleration toward the end of Zimba Ku due to the fact that the song features a human drummer), while the cited prior art are substantially faster, differentiates Zimba Ku and Price Tag from the prior art. Although it is true that Payne stated at his deposition that a composition does not necessarily change based on a change in tempo, Payne Depo. at 115:9-23, as the Second Circuit found in *Glover v. Austin*, probative similarity between two songs can be based at least in part on an expert opinion that the two songs had "significantly similar overall rhythmic thrust, feel and tempo," such that "whichever song was created first, the second song was created with reference to and influenced by the first." 289 F. App'x 430, 432 (2d Cir. 2008).

---

[8] Defendants' reliance on an exercise from an instruction book entitled "The Drumset Musician," which they assert is identical to the drum parts in Zimba Ku and Price Tag, is similarly unavailing. Defs.' Br. at 18. As Plaintiff's expert rightly ntoes, the exercise does not include the snare drum "drag" or "ghost note," Payne Rebuttal Report at 11, and does not contain alternately accented 16th notes on the hi-hat. Payne Depo. at 52:16-21.

12

Thus, regardless of whether differences in tempo between the cited prior art and the compositions in question render the drum parts commonplace or not, the fact that two songs share the same tempo—as Zimba Ku and Price Tag do—is a relevant consideration in determining probative similarity. That the expert in *Glover* highlighting the similarities in "rhythmic thrust, feel and tempo" as evidence probative of copying was Dr. Ferrara—Defendants' expert here—further undermines Defendants' argument here that tempo is irrelevant to the issue of probative similarity.[9]

Thus, unlike the "structural idea" of two eight-measure phrases or 4/4 time, *Velez*, 2007 WL 120686, at *10, or a three-note sequence "much-used" in traditional western music, *McDonald*, 1991 WL 311921, at *4, Defendants have failed to show how the combination of elements that comprise the Zimba Ku and Price Tag drum part is so trite and commonplace as to preclude an inference of copying. This is not to say that Plaintiff has proved that the similarities between Zimba Ku's and Price Tag's drum parts are so probative of copying that independent creation was not possible; to the contrary, a jury may well find that even though it has not been presented with prior art embodying precisely the combination of elements at issue, the similarities between Zimba Ku and Price Tag nevertheless do not sufficiently raise an inference

---

[9] This is not to say that if a plaintiff claimed that the only similarity between his work and a defendant's was tempo, probative similarity would be found. To the contrary, a particular tempo, standing in isolation, would be akin to 4/4 time—so commonplace and unremarkable that it could not give rise to an inference of copying. *See Velez*, 2007 WL 1206868, at *10. Likewise, for purposes of the substantial similarity analysis, discussed below, tempo itself is unprotectable and would not, in isolation, be a similarity that could give rise to infringement liability. *Currin v. Arista Records, Inc.*, 724 F. Supp. 2d 286, 294 (D. Conn. 2010) ("the speed of the song is not, by itself, a protectable element"). Nevertheless, when viewed in conjunction with other similarities, as *Glover*, 289 F. App'x at 432, and Dr. Ferrara himself suggests, the fact that two songs share the same tempo can be probative of copying. The same is true in the substantial similarity context. *See Levine v. McDonald's Corp.*, 735 F. Supp. 92, 97 (S.D.N.Y. 1990) (use of "rapid tempo" alone not protectable and cannot form the basis of an infringement claim, but may be protectable in "compilation" with other elements); *see also Swirsky*, 376 F.3d at 848 n.13 (analyzing substantial similarity of musical compositions without regard to elements such as tempo may "break music down beyond recognition. If a musician were provided with a group of notes identified only by numerical pitch sequences, he or she could play that music a number of different ways, none of them being substantially similar to each other. In order to perform a song exactly, the musician would need information about key, harmony, rhythm, and tempo—the type of information not included in the district court's comparison.")

13

of copying. At this point in the litigation, however, the Court cannot conclude as a matter of law that no reasonable juror could infer, on the current record, that the creators of Price Tag copied Zimba Ku.[10]

### b. Sampling

As further evidence of actual copying, Plaintiff presents expert evidence concluding that Defendants directly sampled Zimba Ku's drum part in the creation of Price Tag.[11] Because the Court has already concluded, based on the probative similarity analysis above, that a genuine issue of fact exists as to whether actual copying has occurred, Plaintiff's sampling argument is not necessary at this juncture to set forth a separate ground for establishing actual copying. Nevertheless, the Court will briefly address the various objections Defendants have lodged against the propriety of Plaintiff's sampling argument. In short, while the Court does not rely on the sampling evidence for purposes of the instant motion, Plaintiff is free to continue developing such evidence in fact discovery, and, to the extent necessary, Defendants may meet any such argument with further expert discovery, as explained below.

Defendants first argue that Plaintiff's sampling argument is an "irrelevant diversionary tactic" because Plaintiff owns only the musical composition copyright, not the sound recording copyright, of Zimba Ku. Defs.' Br. at 24. Defendants provide no authority, however, to support the contention that Plaintiff cannot base an infringement claim on sampling simply because Plaintiff does not own the sound recording of Zimba Ku. While sampling involves the direct

---

[10] This is particularly so given that no fact discovery has taken place and, therefore, the issue of Defendants' access to Zimba Ku has not been developed or litigated. *See, e.g.*, Reply Br. at 13 n.19 (access is "not at issue on the present motion"). Since the law is clear that the degree of probative similarity necessary to raise an inference of copying is inversely related to the proof of access, *see Velez*, 2007 WL 120686, at *6 ("the greater the proof of access, the less striking the similarities must be in order for actual copying to be inferred"), the Court cannot conclude, without evidence regarding access, that the similarities between Zimba Ku and Price Tag preclude an inference of copying as a matter of law.

[11] "Sampling" is a "technique whereby a portion of an already existing sound recording is incorporated into a new work." *Brown v. Columbia Recording Corp.*, No. 03-CV-6570 (DAB) (KNF), 2006 WL 3616966, at *2 (S.D.N.Y. Dec. 12, 2006).

14

copying of a sound recording, this mode of copying does not somehow shield a defendant from also infringing the underlying musical composition. Indeed, the case cited by Defendants, *Newton v. Diamond*, 204 F. Supp. 2d 1244 (C.D. Cal. 2002), stands for this precise proposition. In that case, the plaintiff was the sole author of a musical composition, "Choir," which was sampled by the defendants. *Newton*, 204 F. Supp. 2d at 1246. The plaintiff held a copyright to the musical composition of "Choir," but not the rights to the sound recording, which had previously been licensed to ECM Records, which in turn granted a license to the defendants to sample the sound recording. *Id.* at 1246. The defendants had not obtained similar rights for use of the musical composition. *Id.* at 1247. Thus, although the plaintiff's claims related only to the underlying musical composition, rather than the sound recording of "Choir," the court did not automatically dismiss the case simply because the claims were based on sampling. Instead, the court "first determine[d] what elements of Plaintiff's work are protected by his copyright in the musical composition, as opposed to those protected by the copyright in the sound recording, and 'filter[ed] out' the latter." *Id.* at 1249. In doing so, the court extracted out the "combination of performance techniques [the] [p]laintiff employ[ed] in the execution of his composition," and proceeded to analyze the copyright claim based on the sequence of notes at issue, rather than the unique sounds produced and used in the defendants' sample. *Id.* at 1252. There is thus no suggestion in *Newton* that a plaintiff who owns the copyright in a musical composition must also own a copyright in the sound recording in order to base a copyright claim on sampling, at least insofar as the plaintiff rests his claims on compositional elements, rather than on the sounds fixed in the recording.[12]

---

[12] The same is true of *Poindexter v. EMI Record Group Inc.*, No. 11-CV-0559 (LTS), 2012 WL 1027639, at \*4 (S.D.N.Y. Mar. 27, 2012), the other case Defendants cite in their reply brief. There, the court held that the plaintiff did not have standing to assert a sound recording claim, but considered the plaintiff's sampling-based musical composition claim. *Id.* Similar to the court in *Newton*, the court in *Poindexter* stated that it "must filter out

Here, Plaintiff's claims are based on the compositional elements of the Zimba Ku drum part. That the means by which the Defendants allegedly copied these elements is through sampling does not immunize them from infringing the underlying musical composition copyright. Thus, if Plaintiff is able to present evidence showing that Defendants did in fact sample the Zimba Ku drum part, such evidence would constitute proof that Defendants actually copied Plaintiff's musical composition. *See generally Vargas v. Transeau*, 514 F. Supp. 2d 439 (S.D.N.Y. 2007) (analyzing expert evidence of sampling in considering whether "actual copying" occurred, where the plaintiff based his claims on both musical composition and sound recording copyrights), *aff'd sub nom. Vargas v. Pfizer, Inc.*, 352 F. App'x 458 (2d Cir. 2009).

Defendants next request that the Court strike certain assertions Plaintiff's sampling expert, Peter Becker, made for the first time at his deposition and which were not contained in his Rule 26 reports. Reply at 14-15. Rule 26(a)(2)(B) requires that an expert witness provide a written report "if the [expert] witness is one retained . . . to provide expert testimony in the case . . . ." The written report must include "a complete statement of all opinions the witness will express and the basis and reasons for them; . . . the facts or data considered by the witness in forming them; [and] any exhibits that will be used to summarize or support them." Fed. R. Civ. P. 26(a)(2)(B)(i)-(iii). "It should be assumed that at the time an expert issues his report, that report reflects his full knowledge and complete opinions on the issues for which his opinion has been sought." *Sandata Techs., Inc. v. Infocrossing, Inc.*, Nos. 05-CV-9546 (LMM) (THK), 06-CV-1896 (LMM) (THK), 2007 WL 4157163, at *4 (S.D.N.Y. Nov. 16, 2007). "The purpose of

---

the elements unique to the sound recording and consider only the [song's] compositional elements." *Id.* There was no suggestion, however, that the plaintiff could not base a sampling claim on his musical composition copyright, rather than the sound recording copyright. Here, Plaintiff is not arguing that similarities exist in the sound recordings of Zimba Ku and Price Tag—it is the compositional elements of the drum part that are at issue. Defendants provide no persuasive reason why sampling cannot form the basis of such a claim and provide evidence of actual copying of the musical composition.

the rule is to prevent the practice of 'sandbagging' an opposing party with new evidence." *Ebewo v. Martinez*, 309 F. Supp. 2d 600, 607 (S.D.N.Y. 2004). A party who fails to disclose information pursuant to Rule 26(a) "is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

Here, Becker filed an initial expert report, *see* Becker Decl. Ex. 2 ("Becker Initial Report"), and a rebuttal report, *see* Becker Decl. Ex. 3 ("Becker Rebuttal Report"), concluding that, based on audio analysis and waveform analysis, the drum part in question from Zimba Ku was sampled by Price Tag. At his subsequent deposition, Becker stated for the first time additional grounds for his expert opinion based on what he concluded were volume imbalances in the sound mix of Zimba Ku that also appeared in Price Tag. *See* Reply Br. at 15 n.22; Becker Depo. at 146:21-153:9, 171:23-172:15; 180:3-182:24; Becker Decl. ¶¶ 29-34. Since his deposition, Becker has not filed any supplemental expert report. The first and only time he has described these volume imbalance opinions in writing is in his declaration in support of Plaintiff's opposition to summary judgment. *See* Becker Decl. ¶¶ 29-34. Accordingly, Defendants object to the inclusion of Becker's volume imbalance opinions in the summary judgment record due to his failure to include such opinions in his Rule 26 expert reports. Defs.' Resp. to Pl.'s Add'l Stmt. at 11, 14; Reply Br. at 14-15.

The Court need not determine whether the evidence of volume imbalances should be struck from the summary judgment record since, as stated above, its holding on the merits would remain the same even in the absence of such evidence. Moving forward into the fact discovery phase of this case, to the extent that Defendants seek to rebut these new opinions, the Court shall permit continued expert discovery for this express purpose. Whatever prejudice Defendants may

have suffered due to the late disclosure is therefore moot, and any further prejudice that may have persisted beyond summary judgment will be cured by Defendants' ability to rebut these disclosures with their own expert evidence.

Similarly, to the extent that Defendants seek to refute the merits of Plaintiff's sampling evidence with their own expert evidence, the Court need not address such arguments at this time because, as discussed above, the Court has already denied summary judgment on the "actual copying" prong of the copyright infringement analysis. In any event, Becker's expert opinion has highlighted the need for further fact discovery on the sampling issue. Becker notes in his initial report that he would be aided by review of "the individual tracks embodied on the recording [of Price Tag] or the Pro Tools sessions for the creation of the drums in Price Tag," as well as "any explanation by the writers and producer of Price Tag" as to what he sees as the duplication of the drum timing. Becker Initial Report at 6.[13]

In sum, based on the probative similarity analysis, there is a triable issue of fact as to whether Defendants actually copied Zimba Ku. Additionally, the parties remain free, as described herein, to further develop their sampling arguments through fact discovery and to reopen expert discovery to address the same, if necessary.

### 2. Improper Appropriation

Turning now to the second prong of the "unauthorized copying" element of a copyright infringement claim, a plaintiff must show that the portion of the work that was actually copied amounts to an "improper or unlawful appropriation." *Jorgensen*, 351 F.3d at 51 (citations

---

[13] Defendants also appear to suggest that Plaintiff's sampling argument has been waived by vaguely asserting that Plaintiff's "prior position" was that "there is no 'sample' at issue in this case," and that Plainitff "did not contest the numerous prior statements to the Court by Defendants' counsel that no such sample is present in 'Price Tag.'" Defs.' Br. at 3 n.5, 24. Defendants, however, do not point to any specific statements regarding this issue made by either party, nor do they specifically argue that Plaintiff has waived this argument. Indeed, Defendants have opposed it on the merits through their own sampling expert. Plaintiff's sampling argument has thus not been waived.

18

omitted). "Once actual copying has been established, the copyright owner must then satisfy the 'improper appropriation' requirement . . . ." *Muller v. Twentieth Century Fox Film Corp.*, 794 F. Supp. 2d 429, 439 (S.D.N.Y. 2011), *aff'd sub nom. Muller v. Anderson*, 501 F. App'x 81 (2d Cir. 2012). "The distinction between 'actual copying' and 'improper appropriation' reflects the fact that 'not all copying results in copyright infringement . . . ." *Velez*, 2007 WL 120686, at *7 (quoting *Boisson v. Banian, Ltd.*, 273 F.3d 262, 268 (2d Cir. 2001)). As the Nimmer treatise explains:

> First, there is the factual question whether the defendant, in creating its work, used the plaintiff's material as a model, template, or even inspiration. If the answer is 'yes,' then one can conclude, as a factual proposition, that copying may have occurred. But the question remains whether such copying is actionable. In other words, that first answer does not vouchsafe resolution of the legal question whether such copying as took place gives rise to liability for infringement.

4 Nimmer on Copyright § 13.01. In order to show that "improper appropriation" has occurred, a plaintiff must establish that "a substantial similarity exists between the defendant's work and the protectable elements of plaintiff's." *Hamil*, 193 F.3d at 99 (citation omitted).

"In order to determine if there is a substantial similarity between two musical works, courts normally apply the ordinary observer test . . . ." *Mayimba Music, Inc. v. Sony Corp. of Am.*, No. 12-CV-1094 (AKH), 2014 WL 5334698, at *15 (S.D.N.Y. Aug. 19, 2014). The plaintiff must prove that the defendant "took from plaintiff's works so much of what is pleasing to the ears of lay listeners, who comprise the audience for whom such . . . music is composed, that defendant wrongfully appropriated something which belongs to the plaintiff." *Repp v. Webber*, 132 F.3d 882, 889 (2d Cir. 1997) (quoting *Arnstein v. Porter*, 154 F.2d 464, 473 (2d Cir. 1946) (alteration in original).

Ultimately, "when determining substantial similarity, 'a court considers whether 'the copying is quantitatively and qualitatively sufficient to support the legal conclusion that

infringement (actionable copying) has occurred.'" *TufAmerica*, 968 F. Supp. 2d at 598 (quoting *Muller*, 794 F. Supp. 2d at 440 n.3); *see also Velez*, 2007 WL 120686, at \*7 (substantial similarity must be "more than de minimus" (citing *Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc.*, 338 F.3d 127, 131 (2d Cir. 2003))); 4 Nimmer on Copyright § 13.03 ("It is clear that slight or trivial similarities are not substantial and are therefore noninfringing.").

The relevant "question in each case is whether the similarity relates to matter that constitutes a substantial portion of [the pre-existing] work—not whether such material constitutes a substantial portion of [the allegedly infringing] work." *TufAmerica*, 968 F. Supp. 2d at 599 (quoting *Williams v. Broadus*, No. 99-CV-10957 (MBM), 2001 WL 984714, at \*3 (S.D.N.Y. 2001)) (alterations in original).

For this "improper appropriation" prong, "it is essential that the similarity relate to copyrightable material. . . . When similar works resemble each other only in unprotected aspects . . . defendant prevails." *Muller*, 794 F. Supp. 2d at 440 (quoting *Bill Diodato Photography, LLC v. Kate Spade, LLC*, 388 F. Supp. 2d 382, 389-90 (S.D.N.Y. 2005)). Whether material is copyrightable depends on whether the work is "original to the author." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991). Originality, as the term is used in copyright, "means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity." *Id.* The "requisite level of creativity is extremely low; even a slight amount will suffice." *Id.* "Originality does not signify novelty; a work may be original even though it closely resembles other works so long as the similarity is fortuitous, not the result of copying." *Id.* As the Supreme Court has explained, if two poets, "each ignorant of the other," composed identical poems, each would be copyrightable since they are both original, though neither is novel. *Id.* at

345-46.

When the work in question contains nonprotectible elements, the Court must "attempt to extract the unprotectible elements from . . . consideration and ask whether the *protectible elements, standing alone,* are substantially similar." *Velez*, 2007 WL 120686, at \*7 (citation omitted) (emphasis in original). "Excessive splintering" of the elements of a work, however, would "result in almost nothing being copyrightable because original works broken down into their composite parts would usually be little more than basic unprotectible elements." *Mena v. Fox Entm't Grp., Inc.*, No. 11-CV-5501 (BSJ), 2012 WL 4741389, at \*4 (citation omitted). Courts must therefore consider the "total concept and feel" of a work. *Id.* (citing *Knitwaves, Inc. v. Lollytogs Ltd. (Inc.)*, 71 F.3d 996, 1003 (2d Cir. 1995)). As such, in considering the "protectible elements" of a work, such elements "can consist of completely original elements devised by the copyright holder, as well as other 'original contributions,' such as 'the original way in which the author has 'selected, coordinated, and arranged' the elements of his or her work.'" *Velez*, 2007 WL 120686, at \*7 (quoting *Knitwaves*, 71 F.3d at 1004). "In other words, unoriginal elements, combined in an original way, can constitute protectable elements of a copyrighted work." *Id.*

"Substantial similarity is generally a question of fact for a jury." *Hogan v. DC Comics*, 48 F. Supp. 2d 298, 310 (S.D.N.Y. 1999). "Summary judgment is appropriate on this issue, however, where 'the similarity concerns only noncopyrightable elements of plaintiff['s] work or no reasonable trier of fact could find the works substantially similar.'" *Id.* (quoting *Williams v. Crichton*, 84 F.3d 581, 587 (2d Cir. 1996)).

In light of the foregoing, the first task in determining whether Zimba Ku and Price Tag share "substantial similarities" is to assess whether the Zimba Ku drum part in question is itself

copyrightable. If not, then even if Defendants did in fact copy it, they would not be liable for infringement. *McDonald*, 1991 WL 311921, at \*2 ("A defendant is not liable for infringement even if he copies, if the copied material is not protectable."). Defendants contend that the originality of the Zimba Ku drum part is irrelevant to the analysis because they have conceded that Plaintiff owns a valid copyright in the Zimba Ku musical composition, Reply Br. at 2, but the Court disagrees. The question is not whether Zimba Ku *as a complete composition* is original and copyrightable for purposes of the first element of the infringement analysis, but whether the *drum part* in question is original and copyrightable for purposes of the substantial similarity analysis. *See Feist*, 499 U.S. at 348 ("The mere fact that a work is copyrighted does not mean that every element of the work may be protected. Originality remains the sine qua non of copyright; accordingly, copyright protection may extend only to those components of a work that are original to the author."); *Jean v. Bug Music, Inc.*, No. 00-CV-4022 (DC), 2002 WL 287786, at \*5 (S.D.N.Y. Feb. 27, 2002) ("The copied elements of the work must be original and nontrivial to constitute improper appropriation."); *BMS Entm't/Heat Music LLC v. Bridges*, No. 04-CV-2584 (PKC), 2005 WL 1593013, at \*2 (S.D.N.Y. July 7, 2005) (no dispute as to the plaintiff's ownership of a valid copyright in the overall musical composition, but the court considered whether the "arguably similar portions of the plaintiffs' composition [were] unoriginal, and therefore ineligible to receive protection under copyright law").

As discussed above in the context of probative similarity, breaking down the Zimba Ku drum part into its constituent components reveals that, viewed in isolation, those components could be considered common and widely used in the prior art. Such components could thus fairly be characterized as "unoriginal and constitute 'scenes a faire,' or ordinary, unprotectable expression." *Intersong-USA v. CBS, Inc.*, 757 F. Supp. 274, 282 (S.D.N.Y. 1991) (concluding

that a "descending scale step motive" and certain "structure patterns," "use of harmonic progression," and "recurring eighth note rhythm" were "common elements . . . found in many other well-known songs" and therefore were not protectable); *see also Acuff-Rose Music, Inc. v. Jostens, Inc.*, 155 F.3d 140, 144 (2d Cir. 1998) (prior usage of a saying was "sufficiently widespread as to make it exceedingly unlikely . . . that [the author] had, in fact, independently created the phrase"); *Velez*, 2007 WL 120686, at *12 (eight-measure phrase was not original because it had been "a widely used structural device for over 50 years"); *Jean*, 2002 WL 287786, at *6 (because the 3-note sequence at issue "is a common musical sequence, a reasonable jury could only find that the authors of [the work] did not create the musical excerpt, and, therefore, this musical phrase is not susceptible to copyright protection").

Even assuming that the individual elements are not original, however, in considering the 'total concept and feel" of these elements in combination, the Court cannot conclude as a matter of law that the "select[ion], coordinat[ion], and arrange[ment]" of these elements is so unoriginal that the Zimba Ku drum part is not protectable. *Velez*, 2007 WL 120686, at *7 ("unoriginal elements, combined in an original way, can constitute protectable elements of a copyrighted work" (quoting *Knitwaves*, 71 F.3d at 1004)). As discussed above, Defendants have not shown that the relevant drum part in its totality existed in any prior art; unlike, therefore, the widely used 3-note sequence in *Jean*, the common saying in *Acuff-Rose*, or the 50-year-old structural device in *Velez*, Defendants have not shown as a matter of law that the drum part was "sufficiently widespread as to make it exceedingly unlikely" that the composer of Zimba Ku independently created it. *Acuff-Rose*, 155 F.3d at 144. Indeed, even if Defendants had shown that the drum part existed in other songs, this lack of novelty would not necessarily defeat Plaintiff's claim to originality, since Defendants do not dispute for purposes of this motion that

23

Lenny Lee Goldsmith "did not copy, refer or otherwise listen to any other song when he wrote Zimba Ku," essentially conceding, for purposes of this motion, that the Zimba Ku drum part was independently created by Goldsmith. Defs.' 56.1 Reply at 2; *see also Feist*, 499 U.S. at 345 ("Originality does not signify novelty; a work may be original even though it closely resembles other works so long as the similarity is fortuitous, not the result of copying.").[14]

Independent creation having been essentially conceded—or, at least, not shown to be untriable as a matter of law—"some minimal degree of creativity" must still be shown in order for the relevant Zimba Ku drum part to be considered original and protectable. *Feist*, 499 U.S. at 345. As mentioned above, the "requisite level of creativity is extremely low; even a slight amount will suffice." *Id.* "So long as a work is independently created, it is entitled to copyright protection, even if it evinces minimal creativity or artistic merit." *BMS Entm't*, 2005 WL 2675088, at *3 (citing *Mattel, Inc. v. Goldberger Doll Mfg. Co.*, 365 F.3d 133, 135 (2d Cir. 2004). Defendants do not specifically address this issue in their briefing, although their existing arguments could be read to suggest that because the common elements that make up the Zimba Ku drum part are so trite, and because the aggregate Zimba Ku drum part contains only slight

---

[14] Defendants argue that the "total concept and feel" analysis should incorporate various aspects of the two songs that are not in dispute, such as differences in structure, key, melody, and lyrics. Defs.' Br. at 23-24. Such an analysis is misguided, however, when the claimed infringement is the copying of a particular portion of the plaintiff's work, rather than the "parroting [of] properties that are apparent only when numerous aesthetic decisions embodied in the plaintiff's work of art—the excerpting, modifying, and arranging of public domain compositions, if any, together with the development and representation of wholly new motifs and the use of texture and color, etc.—are considered in relation to one another." *Tufenkian*, 338 F.3d at 134. In *Tufenkian*, the Second Circuit held that the district court erred in granting summary judgment for the defendants by analyzing the "total concept and feel," or "overall aesthetic," of the works without considering whether "*material portions* of the [defendants' work] infringed on corresponding parts of the [plaintiff's work.]" 338 F.3d at 135. The court concluded that whatever effect the addition of certain elements in the defendants' work would have on a comparison of the two works' "overall feel," it did not "alter the fact that the rest of the [defendants' work] is a near-exact copy of the [plaintiff's work], and therefore infringing." *Id.* at 137. Likewise here, whether the other elements of Price Tag change the "overall feel" of the song relative to Zimba Ku—which of course they do—is irrelevant to the question of whether Price Tag's creators copied a "near-exact" portion of the Zimba Ku drum part and infringed the Zimba Ku copyright. The more sensible approach to the "total concept and feel" analysis in a case like this, as taken by the court in *Tufenkian*, is to consider whether the plaintiff's work "selected, coordinated, or arranged [] uncopyrightable [elements] in an original way," and whether the subsequent work "feature[s] the same selection and arrangement." *Id.* at 136 (quoting *Feist*, 499 U.S. at 362, 349).

variations on the drum parts contained in "Me and Bobby McGee," "ABC," and "I Will Find a Way," the Zimba Ku drum part is insufficiently creative to be considered original. A jury may well so find, but the Court cannot conclude the same as a matter of law, particularly given the low threshold of creativity necessary to find a work original. *See, e.g., Vargas v. Pfizer, Inc.*, 418 F. Supp. 2d 369, 372 (S.D.N.Y. 2005) (finding a triable issue of fact as to whether the plaintiff's "one-bar percussion pattern" was original and noting that "[t]ypically, when the originality of a copyrighted work is at issue, it becomes a question of fact for the jury to resolve" (citation omitted));[15] *BMS Entm't*, 2005 WL 1593013, at *5 (originality of a "call-and-response format," the lyrics "like that" preceded by a one-syllable word, and a "rhythm pattern consisting of an eighth note, quarter note, eighth note," in combination, was a triable issue of fact, as was the defendants' contention that similar prior art "render[ed] the plaintiffs' composition unoriginal"); *Santrayll v. Burrell*, No. 91-CV-3166 (PKL), 1996 WL 134803, at *2 (S.D.N.Y. Mar. 25, 1996) ("repetition of the non-protectible word 'uh-oh' in a distinctive rhythm comprises a sufficiently original composition to render it protectable by the copyright laws").[16]

Comparing, then, the arguably protectable Zimba Ku drum part to the Price Tag drum part, the Court cannot conclude as a matter of law that no reasonable juror could find that the compositions share "substantial similarities." Indeed, an ordinary observer listening to the two songs may well find the two drum parts nearly synchronized, rhythmically. Quantitatively, while

---

[15] Defendants' contention that *Vargas* is irrelevant to this case because it was concerned only with the first prong of infringement—whether the plaintiff owned a valid copyright—rather than substantial similarity is unavailing. Reply Br. at 2-3. Although the precise question at issue in that case was the validity of the copyright, the analysis the court undertook—determining whether a repeated one-measure drum composition was sufficiently original to merit copyright protection—is the precise analysis that must be undertaken here in order to determine if the portion of Zimba Ku that was allegedly copied is protectable.

[16] The Court also notes that, as alleged in Plaintiff's Amended Complaint, Zimba Ku was selected for inclusion on a compilation album entitled "Right On! Breakbeats and Grooves from the Atlantic and Warner Vaults, 1967-1975." Am. Compl. ¶ 28, Ex. 2. Inclusion on an album which "attempt[s] to bring together exquisite grooves recorded for the Atlantic, Warner Bros. and Reprise labels in the period 1967-1975" would seem to suggest, if these allegations are substantiated, that the Zimba Ku breakbeat exhibits at least some modicum of creativity.

25

the alleged infringement is only of one measure of Zimba Ku, which is then repeated continually throughout Price Tag, that one measure is repeated in 87 of Zimba Ku's 104 measures, or 83% of the work. Opp. at 22; *see also TufAmerica*, 968 F. Supp. 2d at 598 (the quantitative component of the substantial similarity analysis "generally concerns the amount of the copyrighted work that is copied"). Qualitatively, Plaintiff argues that the drum part is the "defining musical element of Zimba Ku" and is the song's "heart." Opp. at 22. Indeed, listening to the song, the breakbeat can be reasonably be described as the driving groove, or backbone, of the song. The Court thus cannot conclude as a matter of law that the Zimba Ku drum part is qualitatively insignificant to the work. A reasonable juror could thus find that Defendants "took from plaintiff's works so much of what is pleasing to the ears of lay listeners, who comprise the audience for whom such . . . music is composed, that defendant wrongfully appropriated something which belongs to the plaintiff." *Repp*, 132 F.3d at 889 (citation omitted) (alteration in original).[17]

Because Defendants have not shown that the similarities concern only noncopyrightable elements of Zimba Ku, nor that no reasonable juror could find the works substantially similar, the question of substantial similarity shall be left for the jury. *See Hogan*, 48 F. Supp. 2d at 310.

## CONCLUSION

This case presents a difficult question about when the alleged copying of the percussion elements of a popular song is actionable. While a jury, presented with the full evidentiary record, may find that the similarities between Zimba Ku and Price Tag are too commonplace to warrant an inference of actual copying, or that such similarities are not "substantial" enough to make any actual copying illegal, the Court cannot conclude as much as a matter of law on the

---

[17] This conclusion would not change even if, as Defendants contend, an ordinary listener may find it hard to hear the "drag" or "ghost note" in the snare part of Price Tag. *See* Defs.' Br. at 17. Defendants do not argue that the "drag" or "ghost note" is impossible to hear, and, in any event, even without hearing that one element, a reasonable juror could still find sufficient qualitative and quantitative similarities between the two works.

present motion.  Defendants' motion for summary judgment is therefore denied.

Within two weeks of the date of this Opinion and Order, the parties shall submit a letter to the court proposing a fact discovery schedule, and/or any proposals for reopening expert discovery.

The Clerk of Court is respectfully requested to close the motion pending at ECF No. 43.

SO ORDERED.

Dated:      August 7, 2015
            New York, New York

_____
Ronnie Abrams
United States District Judge